UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X

GABOR FAZEKAS, WACLAW PIATEK, ROMAN JEGLINSKI, JOHNNY P.D. TORRES, PATEREK LUKASZ, LUIS PATRICIO RODRIGUEZ SEPA, ANGEL DIAZ, JULIO M. CARABALLO, STANISLAW R. SIURDA, STANISLAW KURAS, ANDRZEJ KOLANO, BOGDAN S. KOSCIELNY, SLAWOMIR KOMOROWSKI, ROBERT LIPSKI, ROBERT SADOWSKI, HENRYK SAGAN, ZBIGNIEW STORCZYNSKI, JOSE I. GUAZHIMA, PRISCILIANO F. GUZMAN, SEGUNDO RAUL PULLUTACI TOASA, PETER FURTKEVIC, ZDZISLAW DANIEC, SAMUEL GALINDO, MAREK POMASKI, PIECZYKOLAN MARIUSZ, BILSKI LUKASZ, DARIUSZ STOPYRA, MARCIN KUTYLA, BARTLOMIEJ KOCHANCZYK, JOSE RODRIGO DOTA TORRES, LECH S. KUNIKOWSKI, SALATIEL E.C. PASTEN, and SAMUEL G. JUAREZ, on behalf of themselves and all others similarly situated,

Dkt. No.:

**COMPLAINT**

**DEMAND FOR JURY TRIAL**

**Collective Action and Class Action Complaint**

Plaintiffs,

-against-

ZEN RESTORATION, INC., ZEN EUROPEAN RESTORATION, CORP., PRIMO PLUMBING & HVAC, CORP., MIDWAY ELECTRIC CORP., BERNARD Z. SOBUS, Individually, and PRZEMYSLAW SOBUS, Individually,

Defendants.
-------------------------------------------------------------------------X

Gabor Fazekas, Waclaw Piatek, Roman Jeglinski, Johnny P.D. Torres, Paterek Lukasz,

Luis Patricio Rodriguez Sepa, Angel Diaz, Julio M. Caraballo, Stanislaw R. Siurda, Stanislaw

Kuras, Andrzej Kolano, Bogdan S. Koscielny, Slawomir Komorowski, Robert Lipski, Robert

Sadowski, Henryk Sagan, Zbigniew Storczynski, Jose I. Guazhima, Prisciliano F. Guzman,

Segundo Raul Pullutaci Toasa, Peter Furtkevic, Zdzislaw Daniec, Samuel Galindo, Marek

Pomaski, Pieczykolan Mariusz, Bilski Lukasz , Dariusz Stopyra, Marcin Kutyla, Bartlomiej Kochanczyk, Jose Rodrigo Dota Torres, Lech S. Kunikowski, Salatiel E.C. Pasten, and Samuel G. Juarez, ("Named Plaintiffs"), on behalf of themselves and all others similarly situated ("Plaintiffs"), by and through their attorneys, Joseph & Norinsberg, LLC, allege as follows:

## NATURE OF CASE

1.  Plaintiffs bring this action on behalf of themselves and all others similarly situated for Defendants' systemic and continuous violations of: (i) the minimum wage provisions of the Fair Labor Standards Act ("FLSA"), as amended, 29 U.S.C. §§ 206 *et seq*.; (ii) the requirement that employers furnish employees with prompt payment for all wages owed under the New York Labor Law ("NYLL") §§§ 663(1), 191(1)(a) and 191(3); (iii) the overtime provisions of the FLSA; (iv) the overtime provisions of the NYLL and New York Comp.  Codes R.  & Regs ("NYCCRR") Tit.  12, § 142-2.2; (v) the requirement that employers furnish employees with a written statement at the time of hiring containing specific categories of information under the NYLL § 195(1), as codified in the New York Wage Theft Prevention Act (the "NYWTPA"); (vi) the requirement that employers furnish employees with wage statements on each payday containing specific categories of accurate information under the NYLL § 195(3); (vii) the anti-retaliation provision of the NYLL § 215(1); and (viii) any other cause(s) of action that can be inferred from the facts set forth herein.

## PRELIMINARY STATEMENT

2.  Defendants own and manage a large-scale construction business specializing in high-end renovations and restorations in buildings throughout the City of New York.  Defendants employ, and have employed, Plaintiffs as construction workers/laborers to work in their shops and at project sites.

3.     At various times between January of 2014 until the present date, Plaintiffs worked and continue to work as many as six (6) days a week and well over 40 hours each week—some without receiving any payment for wages owed and all without receiving prompt payment of wages owed or overtime compensation as required by law.  Defendants engaged in several willful and deliberate "schemes" which allowed them to extract the maximum amount of labor from Plaintiffs at the lowest cost to themselves.

4.     Defendants misclassified Plaintiffs as "independent contractors" and systematically failed to pay Plaintiffs overtime wages at a rate of one-and-one-half times their regular rate of pay for hours worked in excess of forty (40) hours per work week.

5.      Defendants also regularly shaved three (3) to five (5) hours off of Plaintiffs' weekly paychecks.  Defendants deliberately hid their unlawful compensation practices by failing to keep and provide complete and/or accurate records of the hours worked and wages paid to Plaintiffs.

6.     Further, Defendants habitually paid Plaintiffs with "bounced" checks, which resulted in significant delays in the payment wages.  As a desired effect, this practice caused Plaintiffs to become so preoccupied with simply getting paid that they stopped complaining about other components that make up Defendants' unlawful compensation practices.

7.     Additionally, Defendant had a systemic policy of retaliating against employees that complained about their unlawful compensation practices.  Specifically, Defendants disciplined complaining Plaintiffs by withholding and/or delaying payment of owed wages, thereby financially damaging Plaintiffs, and culminating in Plaintiffs' constructive discharge

8.     Upon information and belief, the corporate Defendants listed herein and their affiliates are interrelated and operate as an enterprise, owning and managing a large construction

company that employs approximately two-hundred (200) employees.  In order to further their unlawful practices, Defendants deliberately engaged in the creation of new corporate entities and other methods of intentional dissembling, in order to conceal the associations between Defendants and avoid their widespread FLSA and NYLL violations from being identified and collectively addressed.

9.      Plaintiffs bring this action on behalf of themselves, and all others similarly situated, both current and former employees, pursuant to the Fair Labor Standards Act ("FLSA"), and specifically the collective action provision of the FLSA, to remedy the Defendants' violations of the wage and hour provisions of the FLSA that have deprived Plaintiffs and other similarly situated construction workers/laborers of their lawful wages.

10.      Plaintiffs also bring this action on behalf of themselves and a class of similarly situated current and former construction workers/laborers of Defendants, pursuant to Fed. R. Civ. P. 23, for violations of the NYLL.

## JURISDICTION AND VENUE

11.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 29 U.S.C. § 201 *et seq.*

12.      The Court's supplemental jurisdiction is invoked pursuant to 28 U.S.C. § 1367(a), which confers supplemental jurisdiction over all non-federal claims arising from a common nucleus of operative facts, such that they form part of the same case or controversy under Article III of the United States Constitution.

13.      Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2), as all actions comprising the claims for relief occurred within this judicial district, and pursuant to 28 U.S.C. § 1391(b) (1), as the Defendants reside within this judicial district.

14.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## DEMAND FOR A JURY TRIAL

15.     Plaintiffs respectfully demand a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

16.     Plaintiffs Gabor Fazekas, Waclaw Piatek, Roman Jeglinski, Johnny P.D. Torres, Paterek Lukasz, Luis Patricio Rodriguez Sepa, Angel Diaz, Julio M.  Caraballo, Stanislaw R. Siurda, Stanislaw Kuras, Andrzej Kolano, Bogdan S. Koscielny, Slawomir Komorowski, Robert Lipski, Robert Sadowski, Henryk Sagan, Zbigniew Storczynski, Jose I. Guazhima, Prisciliano F. Guzman, Segundo Raul Pullutaci Toasa, Peter Furtkevic, Zdzislaw Daniec, Samuel Galindo, Marek Pomaski, Pieczykolan Mariusz, Bilski Lukasz , Dariusz Stopyra, Marcin Kutyla, Bartlomiej Kochanczyk, Jose Rodrigo Dota Torres, Lech S. Kunikowski, Salatiel E.C. Pasten, and Samuel G. Juarez are individuals who, at all times relevant to this Complaint, have been residents of the City and State of New York.

17.     At all times relevant to this Complaint, Plaintiffs were "employees" of Defendants within the meaning of the FLSA, 29 USC § 203(e), and NYLL § 190(2).

***Zen Restoration, Inc.***

18.     At all times relevant to this action, Defendant Zen Restoration, Inc. ("Zen"), was and is a domestic business corporation with its principal place of business located at 273 Russell Street, Brooklyn, New York.

19.    At all times relevant to this action, Zen was and is engaged in "interstate commerce", as defined by the FLSA, and Defendant's qualifying annual business exceeds $500,000.00, the combination of which subjects Zen to the FLSA's overtime requirements.

20.    Zen is a construction business that specializes in high-end restorations of buildings located in the New York City area.  See https://www.zengeneral.com/about-us/ (last viewed on January 24, 2020).

21.    Upon information and belief, Zen is the parent company of Defendants Zen European Restoration, Corp., Primo Plumbing & HVAC, Corp., Midway Electric, Corp.  and of several entities including, but not limited to, TWE Marble Stone Inc., and Kaiser Decorating, Inc.

22.     Defendants Bernard Z. Sobus and Przemyslaw Sobus were, and are, the principal's chief officers of Zen.

23.    Plaintiffs' paystubs indicate that Zen was an entity that issued compensation to Plaintiffs during the relevant time period.

***Zen European Restoration, Corp.***

24.    At all times relevant to this action, Defendant Zen European Restoration, Corp. ("European"), was and is a domestic business corporation with its principal place of business located at 330 Calyer Street, Brooklyn, New York.

25.    At all times relevant to this action, European was and is engaged in "interstate commerce," as defined by the FLSA, and Defendant's qualifying annual business exceeds $500,000.00, the combination of which subjects European to the FLSA's overtime requirements.

26.    Upon information and belief, European forms part of an enterprise operated and/or managed by Zen that employs construction workers/laborers including Plaintiff Lech S. Kunikowski.

27.     Plaintiffs' paystubs indicate that European was an entity that issued compensation to Plaintiffs during the relevant time period.

***Primo Plumbing & HVAC, Corp.***

28.     At all times relevant to this action, Defendant Primo Plumbing, Corp.  ("Primo"), was and is a domestic business corporation with its principal place of business located at 273 Russell Street, Brooklyn, New York.

29.     At all times relevant to this action, Primo was and is engaged in "interstate commerce", as defined by the FLSA, and Defendant's qualifying annual business exceeds $500,000.00, the combination of which subjects Primo to the FLSA's overtime requirements.

*30.*     Upon information and belief, Primo forms part of an enterprise operated and/or managed by Zen that employed construction workers/laborers including Plaintiff Marcin Kutyla.

***Midway Electric, Corp.***

31.     At all times relevant to this action, Defendant Midway Electric, Corp.  ("Midway"), was and is a domestic business corporation with its principal place of business located at 273 Russell Street, Brooklyn, New York.

32.     At all times relevant to this action, Midway was and is engaged in "interstate commerce", as defined by the FLSA, and Defendant's qualifying annual business exceeds $500,000.00, the combination of which subjects Midway to the FLSA's overtime requirements.

33.     Upon information and belief, Midway forms part of an enterprise operated and/or managed by Zen that employed construction workers/laborers including Plaintiff Pieczykolan Mariusz.

*Bernard Z. Sobus and Przemyslaw Sobus*

34.     At all times hereinafter mentioned, Defendants Bernard Z. Sobus ("B. Sobus"), Przemyslaw Sobus ("P. Sobus"), were and are managers, supervisors, and/or members and/or managing members of Zen, European, Primo, and Midway and associated entities which are partners, subsidiaries, parent companies, shells, alter-egos, etc., of Zen, European, Primo and Midway.

35.     At all relevant times herein, B. Sobus and P. Sobus actively participated in the day-to-day operations of Zen and Midway and were individually an "employer" pursuant to the FLSA, 29 U.S.C. §203(d), and the Regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as New York Labor Law § 2 and the Regulations thereunder, and are, therefore, jointly and severally liable with the corporate Defendants listed herein.

36.     B. Sobus and P. Sobus had and have management responsibilities over Zen's construction shops and restoration projects.   Specifically, B. Sobus and P. Sobus directly supervised Plaintiffs.

37.     The above-referenced corporate and individual Defendants are hereinafter referred to collectively as "Defendants."

38.     At all times hereinafter mentioned, Defendants exercised control over the terms and conditions of Plaintiffs' employment, in that Defendants had the power to: (i) hire and fire employees; (ii) determine rates and methods of pay; (iii) determine work schedules; (iv) supervise work and control of the employees, including the Plaintiffs herein; and (v) otherwise affect the quality of the employees' work conditions and employment.   Accordingly, Defendants were the "employer(s)" of Plaintiffs within the meaning of the FLSA and NYLL.

## <u>COLLECTIVE ACTION ALLEGATIONS</u>

39.     Plaintiffs bring their FLSA claims on behalf of themselves and all similarly situated persons who work, or have worked, for Defendants and their associated entities as construction workers/laborers at any point over the three years preceding the filing date of this Complaint, and who were denied: (i) wages for all hours worked; and/or; (ii) wages at the mandatory statutory rate for all hours worked in excess of forty (40) hours, in a workweek; (iii) prompt and/or payment of earned wages (hereinafter, the "FLSA Collective Class").

40.     Defendants are liable under the FLSA for, *inter alia*, failing to pay minimum wages and overtime premiums at one-and-one-half times the regular rate of pay.  There are numerous similarly situated current and former employees of Defendants who have been similarly underpaid in violation of the FLSA, and who would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join.

41.     The total number of persons in the FLSA Collective Action identified above, including both current and former employees over the relevant period, are unknown, and facts on which the calculation of that number can be based are presently within the sole control of Defendants.   Upon information and belief there are at least **two-hundred (200)** FLSA members, and there could be significantly more.

42.     The precise number of FLSA collective action members should be readily available from a review of the Defendants' personnel, scheduling, time and payroll records, and from input received from the collective action as part of the notice and "opt-in" process provided by 29 U.S.C. § 216(b).

## NEW YORK CLASS ACTION ALLEGATIONS

43.     Plaintiffs bring this action on behalf of themselves and on behalf all others similarly situated class of persons under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3), defined to include all construction workers/laborers employed by Defendants, who were: (i) denied wages for all hours worked; and/or (ii) denied wages at the mandatory statutory rate for all hours worked in excess of forty (40) hours in a workweek; (iii) denied prompt payment and/or actual payment of earned wages; and (iv) subject to a company-wide policy of retaliation (hereinafter, the "New York Class").

44.     ***Numerosity:*** The members of the Rule 23 Class are so numerous that  joinder of all members in the case would be impracticable.  Plaintiffs reasonably estimate that there are at least **two-hundred (200)** Class members who reside and work in New York.  The precise number of Class  members should be readily available from a review of Defendants' personnel and payroll records.

45.     ***Commonality/Predominance****:* There is a well-defined commonality of interest among the Rule 23 Class members, and common questions of *both* law and fact predominate in the action over any questions affecting individual members.  These common legal and  factual questions include, but are not limited to, the following:

      a.    Whether Defendants employed and/or jointly employed Plaintiffs and the New York Class members under New York law;

      b.    Whether Defendants failed to pay Plaintiffs and the New York Class members wages for each hour worked;

      c.    Whether Defendants failed to pay Plaintiffs and the New York Class members the statutorily-mandated rate of pay of one-and-one-half times the regular rate of pay for each hour worked in excess of forty (40) hours per week;

      d.    Whether Defendants attempted to circumvent the law by misclassifying most Plaintiffs and the New York Class members and other similarly

situated persons as "independent contractors" for a portion of their work hours;

e.  Whether Defendants violated the NYWTPA by failing to provide Plaintiffs and the New York Class members with a written statement upon hiring, and annually, as required by NYLL § 195(1);

f.  Whether Defendants violated the NYWTPA by failing to provide Plaintiffs and the New York Class members with sufficiently detailed wage statements with each payment, as required by NYLL § 195(3);

g.  Whether Defendants silenced requests for lawful compensation from Plaintiffs and the New York Class members by withholding or delaying their owed wages in violation of NYLL § 215(1);

h.  Whether Defendants should be required to pay compensatory damages, attorneys' fees, costs, and interest for violating the NYLL; and

i.  Whether Defendants' violations were willful.

46.  ***Typicality:*** Plaintiffs' claims are typical of those of the Rule 23 New York Class in that Plaintiffs and all other members suffered damages as a direct and proximate result of Defendants' common and systemic payroll policies and practices.  Plaintiffs' claims arise from the same policies, practices, and course of conduct as all other Rule 23 New York Class members' claims and Plaintiffs' legal theories are based on the same legal theories as all other Rule 23 New York Class members, as detailed above.  Specifically, Plaintiffs and New York Class members were denied pay for all hours worked and were denied overtime compensation at the statutory rate.  Moreover, Defendants fraudulently misclassified most Plaintiffs and the New York Class members as "independent contractors," to conceal their unlawful practices and evade the reach of the courts.

47.  ***Adequacy***: Plaintiffs willfully and adequately protect the interests of the Rule 23 New York Class.  Furthermore, Plaintiffs have retained counsel who are qualified and experienced in the litigation of wage-and-hour class actions.

48.     *Superiority*: A class action is superior to other available methods for the fair  and efficient adjudication of the controversy because, *inter alia*, it is economically unfeasible for the Rule 23 Class members to prosecute individual actions on their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

49.     The case will be manageable as a class action because Defendants  should have payroll systems  that will  allow the wage-and-hour facts and damages issues in the case to be resolved with relative ease.  Because the elements  of Rule 23(b)(3), or in the alternative (c)(4), are satisfied in this case, class certification  is appropriate.

50.     Defendants have acted on grounds generally applicable to the New York Class thereby making relief, including declaratory and/or injunctive relief, appropriate for the New York Class.

## CLASSWIDE FACTUAL ALLEGATIONS UNDER FLSA AND NYLL

### Defendants Fail to Lawfully Compensate Wages for every hour worked, Overtime Wages and other Violations

51.     Plaintiffs bring FLSA and NYLL claims on behalf of themselves and all similarly situated construction workers/laborers ("Class") employed by Defendants.

52.     Defendant Zen is a construction company that specializes in high-end restorations for buildings located throughout the New York City area.  Through European, Primo, Midway and other subsidiaries, Zen owns and/or manages as an enterprise a large-scale constriction business.

53.     Upon information and belief, Defendants have employed more than **two-hundred (200)** construction workers/laborers during the last six (6) years.

54.     As construction workers/laborers, Plaintiffs and Class members have worked at Defendants' shops and at various project sites performing, *inter ali*a: (i) demolition; (ii) carpentry;

(iii) painting; (iii) floor installations and repairs; (iv) plumbing; (v) stone work and fabrication; and (vi) millwork.

55.     Although construction workers are "employees" as a matter of law, Defendants deliberately misclassified Plaintiffs and the Class as "independent contractors" to circumvent state and federal overtime laws.

56.     Despite regularly requiring Plaintiffs and the Class to work more than forty (40) hours a week, Defendants systematically failed to pay them overtime wages at a rate of one-and-one-half times their regular rate of pay for hours worked in excess of forty (40) per work week.

57.     At all relevant times, Defendants failed to keep complete and/or accurate records of the hours worked by and wages paid to Plaintiffs.

58.     Defendants have systematically underreported the number of hours worked by Plaintiffs and the Class, and have effectively omitted their overtime hours from any payroll records.  Accordingly, Defendants willfully failed to pay Plaintiffs and the Class wages for each hour worked as prescribed by provisions of the FLSA and the NYLL.

59.     At all relevant times, Defendants failed to post and/or keep posted a notice explaining employees' rights under the FLSA, in violation of 29 C.F.R. § 516.4.

60.     At all relevant times, Defendants habitually paid Plaintiffs and the Class with bounced checks, which resulted in significant delays in the payment wages.

61.     Worse still, Defendants had a systemic policy of retaliating against employees that complained about their compensation practices.  Specifically, Defendants disciplined complaining Plaintiffs and the Class by withholding and/or delaying owed wages, thereby financially damaging Plaintiffs and the Class, and culminating in their constructive discharge

62.     Defendants' unlawful conduct as described herein is pursuant to a policy or practice of attempting to minimize labor costs by violating the FLSA and NYLL.  This conduct has been widespread, repeated, consistent and willful.

## INDIVIDUAL ALLEGATIONS

### Gabor Fazekas ("Mr. Fazekas")

***Defendants Willfully Failed to Pay Mr. Fazekas Wages for all Hours Worked, and Wage at the Mandatory Statutory Rate for all Overtime Hours.***

63.     Defendants hired Mr. Fazekas on or about October of 2016, as a construction worker/laborer to perform carpentry duties.

64.     Mr. Fazekas was constructively discharged on or about April of 2019.

65.     For the entirety of Mr. Fazekas' employment with Defendants, he was an employee of the Defendants for the following reasons: (i) Mr. Fazekas was supervised by Defendants B. Sobus, P. Sobus and Defendants' foremen; (ii) used Defendants' tools equipment and materials to perform work for Defendant; (iv) worked on a full-time basis for Defendant; (v) adhered to Defendants' set work schedule; (vi) worked at Defendants' place(s) of business and/or project sites; and (vii) was never in business for himself during his employment with Defendants.

66.     Throughout his tenure, Mr. Fazekas worked nine (9) hours per day, five (5) days per week, working an average of forty-five (45) hours per week—which equals five (5) hours of overtime per week.

67.      Defendants also required their employees to work on Saturdays when performing large-scale and/or expedited renovations.  Thus, when directed by Defendants, Mr. Fazekas worked an additional eight (8) hours of overtime per week.  At a minimum, Mr. Fazekas worked one (1) Saturday per month.

68.     In a flagrant scheme to circumvent state and federal overtime laws, Defendants misclassified Mr. Fazekas as an "independent contractor," rather than as their employee.

69.     Defendants fraudulently relied on this classification to deny Mr. Fazekas lawful wages at the mandatory rate of one-and-one-half times his regular hourly rate for all hours worked in excess of forty (40) hours per week.

70.     Mr. Fazekas was not required to clock in and out at the beginning and end of his shift.  Instead, Defendants directed their foremen to record Mr. Fazekas' hours on timesheets.  However, this time-keeping method only perpetuated Defendants' fraud, as the time sheets did not accurately reflect the hours worked by Mr. Fazekas, and he was never provided the opportunity to sign off on these time sheets.

71.     Additionally, Defendants would routinely shave three (3) to five (5) hours off of Mr. Fazekas' weekly paycheck, above and beyond the already inaccurate time sheets.

72.     Defendants flagrantly violated the FLSA and NYLL in other respects as well.

73.     For example, Defendants did not provide Mr. Fazekas with an annual notice setting forth "the rate or rates of pay and basis thereof," among other things, as required by NYLL § 195(1).

74.     Likewise, Defendants did not provide Mr. Fazekas with any wage statements as required by NYLL § 195(3).

75.     Worse still, Defendants regularly issued Mr. Fazekas with paychecks that could not be processed due to insufficient funds.  When Mr. Fazekas brought this to Defendants' attention, he was directed to wait a week or a couple of weeks before cashing or re-depositing the bounced checks.  Mr. Fazekas often accumulated multiple bounced paychecks and was forced to endure an entire month, and sometimes even more without any compensation.  Defendants' practice violated

NYLL §§§ 663(1), 191(1)(a) and 191(3), which provide for the prompt payment of all wages owed.

***Defendants Retaliate Against Mr. Fazekas and Constructively Terminate His Employment.***

76.     Mr. Fazekas often complained to the foremen about Defendants' unlawful compensation practices.  Mr. Fazekas also brought his grievances directly to B. Sobus and P. Sobus on more than one occasion.

77.     Mr. Fazekas's persistence angered B. Sobus and P. Sobus, and they began to retaliate against him by issuing him an increased amount of bounced checks.

78.     By the end of his employment with Defendants, Mr. Fazekas had accumulated twelve (12) bounced checks.

79.     Fueled by economic desperation, Mr. Fazekas was compelled to tender his resignation.  No employee should be forced to work without pay where they are subject to repeated and flagrant violations of federal and state law, and where their employer not only refuses to compensate them in accordance with the law, but also, retaliates against them when the employee asks for their lawful wages.

## **Waclaw Piatek ("Mr. Piatek")**

***Defendants Willfully Failed to Pay Mr. Piatek Wages for all Hours Worked, and Wages at the Mandatory Statutory Rate for all Overtime Hours.***

80.     Defendants hired Mr. Piatek on or about June of 2010, as a construction worker/laborer to perform carpentry duties.

81.     For the entirety of Mr. Piatek's employment with Defendants, he has been an employee of the Defendants for the following reasons: (i) Mr. Piatek is supervised by Defendants B. Sobus, P. Sobus and Defendants' foremen; (ii) uses Defendants' tools equipment and materials to perform work for Defendant; (iii) works on a full-time basis for Defendant; (v) adheres to

Defendants' set work schedule; (vi) works at Defendants' place(s) of business and/or project sites; and (vii) has not been in business for himself.

82.     Mr. Piatek is directed to work nine (9) hours per day, five (5) days per week, working an average of forty-five (45) hours per week—which equals five (5) hours of overtime per week.

83.     Defendants also require their employees to work on Saturdays when performing large-scale and/or expedited renovations.  Thus, when directed by Defendants, Mr. Piatek works an additional eight (8) hours of overtime per week.  At a minimum, Mr. Piatek worked and continues to work two (2) Saturdays per month.

84.     In a scheme to circumvent state and federal overtime laws, Defendants misclassified Mr. Piatek as an "independent contractor," rather than as their employee.

85.     Defendants fraudulently rely on this classification to deny Mr. Piatek lawful wages at the mandatory rate of one-and-one-half times his regular hourly rate for all hours worked in excess of forty (40) hours per week.

86.     Mr. Piatek is not required to clock in and out at the beginning and end of his shift. Instead, Defendants direct their foremen to record Mr. Piatek's hours on timesheets.  However, this time-keeping method only perpetuates Defendants' fraud as the time sheets do not accurately reflect the hours Mr. Piatek works and he is not provided the opportunity to sign off on these time sheets.

87.     Additionally, Defendants routinely shave three (3) to five (5) hours off of Mr. Piatek's weekly paycheck, above and beyond the already inaccurate time sheets.

88.     Defendants flagrantly violate the FLSA and NYLL in other respects as well.

89.     For example, Defendants failed to provide Mr. Piatek with an annual notice setting forth "the rate or rates of pay and basis thereof," among other things, as required by NYLL § 195(1).

90.     Likewise, Defendants failed to provide Mr. Piatek with any wage statements as required by NYLL § 195(3).

91.     Worse still, Defendants regularly issued Mr. Piatek paychecks that could not be processed due to insufficient funds.  When Mr. Piatek brought this to Defendants' attention, he was directed to wait a week or a couple of weeks before cashing or re-depositing the bounced checks.  Mr. Piatek often accumulated multiple bounced paychecks and was forced to endure an entire month, and sometimes even more without any compensation.  Defendants' practice violated NYLL §§§ 663(1), 191(1)(a) and 191(3), which provide for the prompt payment of all wages owed.

92.     To date, Defendants have not compensated Mr. Piatek for four (4) weeks of work. Mr. Piatek incurred substantial losses as a result of Defendants' unlawful compensation practices, including bounced check fees.

### Roman Jeglinkski ("Mr. Jeglinkski")

***Defendants Willfully Failed to Pay Mr. Jeglinkski Wages for all Hours Worked, and Wages at the Mandatory Statutory Rate for all Overtime Hours.***

93.     Mr. Jeglinkski worked for Defendants as a carpenter from on or about April of 2018 to on or about August of 2019.

94.     For the entirety of Mr. Jeglinkski's employment with Defendants, he was an employee of the Defendants for the following reasons: (i) Mr. Jeglinkski was supervised by Defendants B. Sobus, P. Sobus and Defendants' foremen; (ii) used Defendants' tools equipment and materials to perform work for Defendant; (iv) worked on a full-time basis for Defendant; (v)

adhered to Defendants' set work schedule; (vi) worked at Defendants' place(s) of business and/or project sites; and (vii) was never in business for himself during his employment with Defendants.

95.     Throughout his tenure, Mr. Jeglinkski worked nine (9) hours per day, five (5) days per week, working an average of forty-five (45) hours per week—which equals five (5) hours of overtime per week.

96.     Defendants also required their employees to work on Saturdays when performing large-scale and/or expedited renovations.  Thus, when directed by Defendants, Mr. Jeglinkski worked an additional eight (8) hours of overtime per week.  At a minimum, Mr. Jeglinkski worked one (1) Saturday per month.

97.     In a scheme to circumvent state and federal overtime laws, Defendants misclassified Mr. Jeglinkski as an "independent contractor," rather than as their employee.

98.     Defendants fraudulently relied on this classification to deny Mr. Jeglinkski lawful wages at the mandatory rate of one-and-one-half times his regular hourly rate for all hours worked in excess of forty (40) hours per week.

99.     Mr. Jeglinkski was not required to clock in and out at the beginning and end of his shift.  Instead, Defendants directed their foremen to record Mr. Jeglinkski's hours on timesheets.  However, this time keeping method only perpetuated Defendants' fraud as the time sheets did not accurately reflect the hours worked by Mr. Jeglinkski and he was never provided the opportunity to sign off on these time sheets.

100.     Additionally, Defendants would routinely shave three (3) to five (5) hours off of Mr. Jeglinkski's weekly paycheck, above and beyond the already inaccurate time sheets.

101.     Defendants flagrantly violated the FLSA and NYLL in other respects as well.

102.    For example, Defendants did not provide Mr. Jeglinkski with an annual notice setting forth "the rate or rates of pay and basis thereof" among other things as required by NYLL § 195(1).

103.    Likewise, Defendants did not provide Mr. Jeglinkski with any wage statements as required by NYLL § 195(3).

104.    Worse still, Defendants regularly issued Mr. Jeglinkski paychecks that could not be processed due to insufficient funds.  When Mr. Jeglinkski brought this to Defendants' attention, he was directed to wait a week or a couple of weeks before cashing or re-depositing the bounced checks.  Mr. Jeglinkski often accumulated multiple bounced paychecks and was forced to endure an entire month, and sometimes even more without any compensation.  Defendants' practice violated NYLL §§ 663(1), 191(1)(a) and 191(3), which provide for the prompt payment of all wages owed.

105.    To date, Defendants have not compensated Mr. Jeglinkski for seven (7) weeks of work.  Mr. Jeglinkski incurred substantial losses as a result of Defendants' unlawful compensation practices, including bounced check fees.

### Johnny P.D. Torres ("Mr. P.D. Torres")

***Defendants Willfully Failed to Pay Mr. P.D. Torres Wages for all Hours Worked, and Wages at the Mandatory Statutory Rate for all Overtime Hours.***

106.    Defendants hired Mr. P.D. Torres on or about February of 2004, as a construction worker/laborer to perform carpentry duties.

107.    For the entirety of Mr. P.D. Torres' employment with Defendants, he has been an employee of the Defendants for the following reasons: (i) Mr. P.D. Torres is supervised by Defendants B. Sobus, P. Sobus and Defendants' foremen; (ii) uses Defendants' tools equipment

and materials to perform work for Defendant; (iv) works on a full-time basis for Defendant; (v) adhered to Defendants' set work schedule; (vi) works at Defendants' place(s) of business and/or project sites; and (vii) has not been in business for himself.

108.     Mr. P.D. Torres is directed to work nine (9) hours per day, five (5) days per week, working an average of forty-five (45) hours per week—which equals five (5) hours of overtime per week.

109.     Defendants also require their employees to work on Saturdays when performing large-scale and/or expedited renovations.  Thus, when directed by Defendants, Mr. P.D. Torres works an additional eight (8) hours of overtime per week.  At a minimum, Mr. P.D. Torres worked and continues to work two (2) Saturdays per month.

110.     In a scheme to circumvent state and federal overtime laws, Defendants misclassified Mr. P.D. Torres as an "independent contractor," rather than as their employee.

111.     Defendants fraudulently rely on this classification to deny Mr. P.D. Torres lawful wages at the mandatory rate of one-and-one-half times his regular hourly rate for all hours worked in excess of forty (40) hours per week.

112.     Mr. P.D. Torres is not required to clock in and out at the beginning and end of his shift.  Instead, Defendants directed their foremen to record Mr. P.D. Torres' hours on timesheets.  However, this time-keeping method only perpetuates Defendants' fraud as the time sheets do not accurately reflect the hours Mr. P.D. Torres works and he is not provided the opportunity to sign off on these time sheets.

113.     Additionally, Defendants routinely shave three (3) to five (5) hours off of Mr. P.D. Torres' weekly paycheck, above and beyond the already inaccurate time sheets.

114.     Defendants flagrantly violate the FLSA and NYLL in other respects as well.

115.     For example, Defendants failed to provide Mr. P.D. Torres with an annual notice setting forth "the rate or rates of pay and basis thereof," among other things, as required by NYLL § 195(1).

116.     Likewise, Defendants failed to provide Mr. P.D. Torres with any wage statements as required by NYLL § 195(3).

117.     Worse still, Defendants regularly issued Mr. P.D. Torres paychecks that could not be processed due to insufficient funds.   When Mr. P.D. Torres brought this to Defendants' attention, he was directed to wait a week or a couple of weeks before cashing or re-depositing the bounced checks.   Mr. P.D. Torres often accumulated multiple rubber paychecks and was forced to endure an entire month, and sometimes even more without any compensation.   Defendants' practice violated NYLL §§§ 663(1), 191(1)(a) and 191(3), which provide for the prompt payment of all wages owed.

118.     To date, Defendants have not compensated Mr. P.D. Torres for twelve (12) weeks of work.   Mr. P.D. Torres incurred substantial losses as a result of Defendants' unlawful compensation practices, including bounced check fees.

**Paterek Lukasz ("Mr. P. Lukasz")**

***Defendants Willfully Failed to Pay Mr. P. Lukasz Wages for all Hours Worked, and Wages at the Mandatory Statutory Rate for all Overtime Hours.***

119.     Mr. P. Lukasz worked for Defendants as a carpenter from on or about September of 2010 to on or about June of 2019.

120.     For the entirety of Mr. P. Lukasz' employment with Defendants, he was an employee of the Defendants for the following reasons: (i) Mr. P. Lukasz was supervised by Defendants B. Sobus, P. Sobus and Defendants' foremen; (ii) used Defendants' tools equipment and materials to perform work for Defendant; (iv) worked on a full-time basis for Defendant; (v)

adhered to Defendants' set work schedule; (vi) worked at Defendants' place(s) of business and/or project sites; and (vii) was never in business for himself during his employment with Defendants.

121.    Throughout his tenure, Mr. P. Lukasz worked nine (9) hours per day, five (5) days per week, working an average of forty-five (45) hours per week—which equals five (5) hours of overtime per week.

122.    Defendants also required their employees to work on Saturdays when performing large-scale and/or expedited renovations.  Thus, when directed by Defendants, Mr. P. Lukasz worked an additional eight (8) hours of overtime per week.  At a minimum, Mr. P. Lukasz worked one (1) Saturday per month.

123.    In a scheme to circumvent state and federal overtime laws, Defendants misclassified Mr. P. Lukasz as an "independent contractor," rather than as their employee.

124.    Defendants fraudulently relied on this classification to deny Mr. P. Lukasz lawful wages at the mandatory rate of one-and-one-half times his regular hourly rate for all hours worked in excess of forty (40) hours per week.

125.    Mr. P. Lukasz was not required to clock in and out at the beginning and end of his shift.  Instead, Defendants directed their foremen to record Mr. P. Lukasz' hours on timesheets. However, this time-keeping method only perpetuates Defendants' fraud, as the time-sheets did not accurately reflect the hours worked by Mr. P. Lukasz and he was never provided the opportunity to sign off on these time sheets.

126.    Additionally, Defendants would shave three (3) to five (5) hours off of Mr. Mr. P. Lukasz' weekly paycheck, above and beyond the already inaccurate time sheets.

127.    Defendants flagrantly violated the FLSA and NYLL in other respects as well.

128.     For example, Defendants did not provide Mr. P. Lukasz with an annual notice setting forth "the rate or rates of pay and basis thereof" among other things as required by NYLL § 195(1).

129.     Likewise, Defendants did not provide Mr. P. Lukasz with any wage statements as required by NYLL § 195(3).

130.     Worse still, Defendants regularly issued Mr. P. Lukasz paychecks that could not be processed due to insufficient funds.  When Mr. P. Lukasz brought this to Defendants' attention, he was directed to wait a week or a couple of weeks before cashing or re-depositing the bounced checks.  Mr. P. Lukasz often accumulated multiple bounced paychecks and was forced to endure an entire month, and sometimes even more without any compensation.  Defendants' practice violated NYLL §§ 663(1), 191(1)(a) and 191(3), which provide for the prompt payment of all wages owed.

131.     To date, Defendants have not compensated Mr. P. Lukasz for five (5) weeks of work.  Mr. P. Lukasz incurred substantial losses as a result of Defendants' unlawful compensation practices, including bounced check fees.

**<u>Luis Patricio Rodriguez Sepa ("Mr. Sepa")</u>**

***Defendants Willfully Failed to Pay Mr. Sepa Wages for all Hours Worked, and Wages at the Mandatory Statutory Rate for all Overtime Hours.***

132.     Mr. Sepa worked for Defendants as a carpenter/welder from on or about June of 2012 to on or about September of 2019.

133.     For the entirety of Mr. Sepa's employment with Defendants, he was an employee of the Defendants for the following reasons: (i) Mr. Sepa was supervised by Defendants B. Sobus, P. Sobus and Defendants' foremen; (ii) used Defendants' tools equipment and materials to perform work for Defendant; (iv) worked on a full-time basis for Defendant; (v) adhered to Defendants'

set work schedule; (vi) worked at Defendants' place(s) of business and/or project sites; and (vii) was never in business for himself during his employment with Defendants.

134.    Throughout his tenure, Mr. Sepa worked nine (9) hours per day, five (5) days per week, working an average of forty-five (45) hours per week—which equals five (5) hours of overtime per week.

135.     Defendants also required their employees to work on Saturdays when performing large-scale and/or expedited renovations.  Thus, when directed by Defendants, Mr. Sepa worked an additional eight (8) hours of overtime per week.  At a minimum, Mr. Sepa worked two (2) Saturdays per month.

136.    In a scheme to circumvent state and federal overtime laws, Defendants misclassified Mr. Sepa as an "independent contractor," rather than as their employee.

137.    Defendants fraudulently relied on this classification to deny Mr. Sepa lawful wages at the mandatory rate of one-and-one-half times his regular hourly rate for all hours worked in excess of forty (40) hours per week.

138.    Mr. Sepa was not required to clock in and out at the beginning and end of his shift. Instead, Defendants directed their foremen to record Mr. Sepa's hours on timesheets.  However, this time-keeping method only perpetuated Defendants' fraud, as the time sheets did not accurately reflect the hours worked by Mr. Sepa and he was never provided the opportunity to sign off on these time sheets.

139.    Additionally, Defendants would routinely shave three (3) to five (5) hours off of Mr. Sepa's weekly paycheck, above and beyond the already inaccurate time sheets.

140.    Defendants flagrantly violated the FLSA and NYLL in other respects as well.

141.   For example, Defendants did not provide Mr. Sepa with an annual notice setting forth "the rate or rates of pay and basis thereof," among other things, as required by NYLL § 195(1).

142.   Likewise, Defendants did not provide Mr. Sepa with any wage statements as required by NYLL § 195(3).

143.   Worse still, Defendants regularly issued Mr. Sepa paychecks that could not be processed due to insufficient funds.  When Mr. Sepa brought this to Defendants' attention, he was directed to wait a week or a couple of weeks before cashing or re-depositing the bounced checks. Mr. Sepa often accumulated multiple bounced paychecks and was forced to endure an entire month, and sometimes even more without any compensation.  Defendants' practice violated NYLL §§§ 663(1), 191(1)(a) and 191(3), which provide for the prompt payment of all wages owed.

144.   To date, Defendants have not compensated Mr. Sepa for six (6) weeks of work. Mr. Sepa incurred substantial losses as a result of Defendants' unlawful compensation practices, including bounced check fees.

### Angel Diaz ("Mr. Diaz")

***Defendants Willfully Failed to Pay Mr. Diaz Wages for all Hours Worked, and Wages at the Mandatory Statutory Rate for all Overtime Hours.***

145.   Mr. Diaz worked for Defendants as a carpenter from on or about January of 2012 to on or about August of 2018.

146.   For the entirety of Mr. Diaz' employment with Defendants, he was an employee of the Defendants for the following reasons: (i) Mr. Diaz was supervised by Defendants B. Sobus, P. Sobus and Defendants' foremen; (ii) used Defendants' tools equipment and materials to perform work for Defendant; (iv) worked on a full-time basis for Defendant; (v) adhered to Defendants'

set work schedule; (vi) worked at Defendants' place(s) of business and/or project sites; and (vii) was never in business for himself during his employment with Defendants.

147.    Throughout his tenure, Mr. Diaz worked nine (9) hours per day, five (5) days per week, working an average of forty-five (45) hours per week—which equals five (5) hours of overtime per week.

148.    Defendants also required their employees to work on Saturdays when performing large-scale and/or expedited renovations.  Thus, when directed by Defendants, Mr. Diaz worked an additional eight (8) hours of overtime per week.  At a minimum, Mr. Diaz worked one (1) Saturday per month.

149.    In a scheme to circumvent state and federal overtime laws, Defendants misclassified Mr. Diaz as an "independent contractor," rather than as their employee.

150.    Defendants fraudulently relied on this classification to deny Mr. Diaz lawful wages at the mandatory rate of one-and-one-half times his regular hourly rate for all hours worked in excess of forty (40) hours per week.

151.    Mr. Diaz was not required to clock in and out at the beginning and end of his shift. Instead, Defendants directed their foremen to record Mr. Diaz' hours on timesheets.  However, this time-keeping method only perpetuated Defendants' fraud as the time sheets did not accurately reflect the hours worked by Mr. Diaz and he was never provided the opportunity to sign off on these time sheets.

152.    Additionally, Defendants would routinely shave three (3) to five (5) hours off of Mr. Diaz' weekly paycheck, above and beyond the already inaccurate time sheets.

153.    Defendants flagrantly violated the FLSA and NYLL in other respects as well.

154.    For example, Defendants did not provide Mr. Diaz with an annual notice setting forth "the rate or rates of pay and basis thereof" among other things as required by NYLL § 195(1)

155.    Likewise, Defendants did not provide Mr. Diaz with any wage statements as required by NYLL § 195(3).

156.    Worse still, Defendants regularly issued Mr. Diaz paychecks that could not be processed due to insufficient funds.  When Mr. Diaz brought this to Defendants' attention, he was directed to wait a week or a couple of weeks before cashing or re-depositing the bounced checks. Mr. Diaz often accumulated multiple bounced paychecks and was forced to endure an entire month, and sometimes even more without any compensation.  Defendants' practice violated NYLL §§§ 663(1), 191(1)(a) and 191(3), which provide for the prompt payment of all wages owed.

### Julio M.  Caraballo ("Mr. Caraballo")

***Defendants Willfully Failed to Pay Mr. Caraballo Wages for all Hours Worked, and Wages at the Mandatory Statutory Rate for all Overtime Hours.***

157.    Defendants hired Mr. Caraballo on or about January of 2010, as a construction worker/laborer to perform carpentry duties.

158.    For the entirety of Mr. Caraballo's employment with Defendants, he has been an employee of the Defendants for the following reasons: (i) Mr. Caraballo is supervised by Defendants B. Sobus, P. Sobus and Defendants' foremen; (ii) uses Defendants' tools equipment and materials to perform work for Defendant; (iv) works on a full-time basis for Defendant; (v) adheres to Defendants' set work schedule; (vi) works at Defendants' place(s) of business and/or project sites; and (vii) has not been in business for himself.

159.    Mr. Caraballo is directed to work nine (9) hours per day, five (5) days per week, working an average of forty-five (45) hours per week—which equals five (5) hours of overtime per week.

160.    Defendants also require their employees to work on Saturdays when performing large-scale and/or expedited renovations.  Thus, when directed by Defendants, Mr. Caraballo works an additional eight (8) hours of overtime per week.  At a minimum, Mr. Caraballo worked and continues to work two (2) Saturdays per month.

161.    In a scheme to circumvent state and federal overtime laws, Defendants misclassified Mr. Caraballo as an "independent contractor," rather than as their employee.

162.    Defendants fraudulently rely on this classification to deny Mr. Caraballo lawful wages at the mandatory rate of one-and-one-half times his regular hourly rate for all hours worked in excess of forty (40) hours per week.

163.    Mr. Caraballo is not required to clock in and out at the beginning and end of his shift.  Instead, Defendants direct their foremen to record Mr. Caraballo's hours on timesheets.  However, this time-keeping method only perpetuates Defendants' fraud as the time sheets do not accurately reflect the hours Mr. Caraballo worked and he is not provided the opportunity to sign off on these time sheets.

164.    Additionally, Defendants routinely shave three (3) to five (5) hours off of Mr. Caraballo's weekly paycheck, above and beyond the already inaccurate time sheets.

165.    Defendants flagrantly violate the FLSA and NYLL in other respects as well.

166.    For example, Defendants failed to provide Mr. Caraballo with an annual notice setting forth "the rate or rates of pay and basis thereof," among other things, as required by NYLL § 195(1).

167.    Likewise, Defendants failed to provide Mr. Caraballo with any wage statements as required by NYLL § 195(3).

168.    Worse still, Defendants regularly issued Mr. Caraballo paychecks that could not be processed due to insufficient funds.  When Mr. Caraballo brought this to Defendants' attention, he was directed to wait a week or a couple of weeks before cashing or re-depositing the bounced checks.  Mr. Caraballo often accumulated multiple bounced paychecks and was forced to endure an entire month, and sometimes even more without any compensation.  Defendants' practice violated NYLL §§§ 663(1), 191(1)(a) and 191(3), which provide for the prompt payment of all wages owed.

169.    To date, Defendants have not compensated Mr. Caraballo for eleven (11) weeks of work.  Mr. Caraballo incurred substantial losses as a result of Defendants' unlawful compensation practices, including bounced check fees.

### Stanislaw R.  Siurda ("Mr. Siurda")

***Defendants Willfully Failed to Pay Mr. Siurda Wages for all Hours Worked, and Wages at the Mandatory Statutory Rate for all Overtime Hours.***

170.    Mr. Siurda worked for Defendants as a painter/plasterer from on or about January of 2016 to on or about July of 2019.

171.    For the entirety of Mr. Siurda's employment with Defendants, he was an employee of the Defendants for the following reasons: (i) Mr. Siurda was supervised by Defendants B. Sobus, P. Sobus and Defendants' foremen; (ii) used Defendants' tools equipment and materials to perform work for Defendant; (iv) worked on a full-time basis for Defendant; (v) adhered to Defendants' set work schedule; (vi) worked at Defendants' place(s) of business and/or project sites; and (vii) was never in business for himself during his employment with Defendants.

172.    Throughout his tenure, Mr. Siurda worked nine (9) hours per day, five (5) days per week, working an average of forty-five (45) hours per week—which equals five (5) hours of overtime per week.

173.    Defendants also required their employees to work on Saturdays when performing large-scale and/or expedited renovations.  Thus, when directed by Defendants, Mr. Siurda worked an additional eight (8) hours of overtime per week.  At a minimum, Mr. Siurda worked one (1) Saturday per month.

174.    In a scheme to circumvent state and federal overtime laws, Defendants misclassified Mr. Siurda as an "independent contractor," rather than as their employee.

175.    Defendants fraudulently relied on this classification to deny Mr. Siurda lawful wages at the mandatory rate of one-and-one-half times his regular hourly rate for all hours worked in excess of forty (40) hours per week.

176.    Mr. Siurda was not required to clock in and out at the beginning and end of his shift.  Instead, Defendants directed their foremen to record Mr. Siurda's hours on timesheets.  However, this time-keeping method only perpetuated Defendants' fraud as the time sheets did not accurately reflect the hours worked by Mr. Siurda and he was never provided the opportunity to sign off on these time sheets.

177.    Additionally, Defendants would routinely shave three (3) to five (5) hours off of Mr. Siurda's weekly paycheck, above and beyond the already inaccurate time sheets.

178.    Defendants flagrantly violated the FLSA and NYLL in other respects as well.

179.    For example, Defendants did not provide Mr. Siurda with an annual notice setting forth "the rate or rates of pay and basis thereof," among other things, as required by NYLL § 195(1).

180.    Likewise, Defendants did not provide Mr. Siurda with any wage statements as required by NYLL § 195(3).

181. Worse still, Defendants regularly paid Mr. Siurda through weekly paychecks that would bounce after deposit. When Mr. Siurda brought this to Defendants' attention, he would be directed to wait a couple of weeks before re-depositing the bounced checks. Mr. Siurda would often accumulate multiple bounced paychecks before being able to re-deposit them. Defendants' practice violated NYLL §§§ 663(1), 191(1)(a) and 191(3), which provides for the prompt payment of all wages owed.

182. To date, Defendants have not compensated Mr. Siurda for two (2) weeks of work. Mr. Siurda incurred substantial losses as a result of Defendants' unlawful compensation practices, including bounced check fees.

## Stanislaw Kuras ("Mr. Kuras")

***Defendants Willfully Failed to Pay Mr. Kuras Wages for all Hours Worked, and Wages at the Mandatory Statutory Rate for all Overtime Hours***.

183. Defendants hired Mr. Kuras on or about June of 2017, as a construction worker/laborer to perform carpentry duties.

184. For the entirety of Mr. Kuras' employment with Defendants, he has been an employee of the Defendants for the following reasons: (i) Mr. Kuras is supervised by Defendants B. Sobus, P. Sobus and Defendants' foremen; (ii) uses Defendants' tools equipment and materials to perform work for Defendant; (iv) works on a full-time basis for Defendant; (v) adheres to Defendants' set work schedule; (vi) works at Defendants' place(s) of business and/or project sites; and (vii) has not been in business for himself.

185. Mr. Kuras is directed to work nine (9) hours per day, five (5) days per week, working an average of forty-five (45) hours per week—which equals five (5) hours of overtime per week.

186.     Defendants also require their employees to work on Saturdays when performing large-scale and/or expedited renovations.  Thus, when directed by Defendants, Mr. Kuras worked an additional eight (8) hours of overtime per week.  At a minimum, Mr. Kuras worked and continues to work one (1) Saturday per month.

187.     In a flagrant scheme to circumvent state and federal overtime laws, Defendants misclassified Mr. Kuras as an "independent contractor," rather than as their employee.

188.     Defendants fraudulently rely on this classification to deny Mr. Kuras lawful wages at the mandatory rate of one-and-one-half times his regular hourly rate for all hours worked in excess of forty (40) hours per week.

189.     Mr. Kuras is not required to clock in and out at the beginning and end of his shift. Instead, Defendants direct their foremen to record Mr. Kuras' hours on timesheets.  However, this time-keeping method only perpetuates Defendants' fraud, as the time sheets do not accurately reflect the hours worked by Mr. Kuras, and he is not provided the opportunity to sign off on these time sheets.

190.     Additionally, Defendants routinely shave three (3) to five (5) hours off of Mr. Kuras's weekly paycheck, above and beyond the already inaccurate time sheets.

191.     Defendants flagrantly violate the FLSA and NYLL in other respects as well.

192.     For example, Defendants failed to provide Mr. Kuras with an annual notice setting forth "the rate or rates of pay and basis thereof," among other things, as required by NYLL § 195(1).

193.    Likewise, Defendants failed to provide Mr. Kuras with any wage statements as required by NYLL § 195(3).

194.     Worse still, Defendants regularly issued Mr. Kuras paychecks that could not be processed due to insufficient funds.  When Mr. Kuras brought this to Defendants' attention, he was directed to wait a week or a couple of weeks before cashing or re-depositing the bounced checks.  Mr. Kuras often accumulated multiple bounced paychecks and was forced to endure an entire month, and sometimes even more without any compensation.  Defendants' practice violated NYLL §§§ 663(1), 191(1)(a) and 191(3), which provide for the prompt payment of all wages owed.

195.    To date, Defendants have not compensated Mr. Kuras for twenty-five (25) weeks of work.  Mr. Kuras incurred substantial losses as a result of Defendants' unlawful compensation practices, including bounced check fees.

### Andrzej Kolano ("Mr. Kolano")

***Defendants Willfully Failed to Pay Mr. Kolano Wages for all Hours Worked, and Wages at the Mandatory Statutory Rate for all Overtime Hours.***

196.    Defendants hired Mr. Kolano on or about January of 2019, as a construction worker/laborer to perform carpentry duties.

197.    For the entirety of Mr. Kolano's employment with Defendants, he has been an employee of the Defendants for the following reasons: (i) Mr. Kolano is supervised by Defendants B. Sobus, P. Sobus and Defendants' foremen; (ii) uses Defendants' tools equipment and materials to perform work for Defendant; (iv) works on a full-time basis for Defendant; (v) adheres to Defendants' set work schedule; (vi) works at Defendants' place(s) of business and/or project sites; and (vii) has not been in business for himself.

198.    Mr. Kolano is directed to work nine (9) hours per day, five (5) days per week, working an average of forty-five (45) hours per week—which equals five (5) hours of overtime per week.

199.    In a flagrant scheme to circumvent state and federal overtime laws, Defendants misclassified Mr. Kolano as an "independent contractor," rather than as their employee.

200.    Defendants fraudulently rely on this classification to deny Mr. Kolano lawful wages at the mandatory rate of one-and-one-half times his regular hourly rate for all hours worked in excess of forty (40) hours per week.

201.    Mr. Kolano is not required to clock in and out at the beginning and end of his shift. Instead, Defendants direct their foremen to record Mr. Kolano's hours on timesheets.  However, this time-keeping method only perpetuates Defendants' fraud, as the time sheets do not accurately reflect the hours Mr. Kolano works, and he is not provided the opportunity to sign off on these time sheets.

202.    Additionally, Defendants routinely shave three (3) to five (5) hours off of Mr. Kolano's weekly paycheck, above and beyond the already inaccurate time sheets.

203.    Defendants flagrantly violate the FLSA and NYLL in other respects as well.

204.    For example, Defendants failed to provide Mr. Kolano with an annual notice setting forth "the rate or rates of pay and basis thereof," among other things, as required by NYLL § 195(1).

205.    Likewise, Defendants failed to provide Mr. Kolano with any wage statements as required by NYLL § 195(3).

206.     Worse still, Defendants regularly issued Mr. Kolano paychecks that could not be processed due to insufficient funds.  When Mr. Kolano brought this to Defendants' attention, he

was directed to wait a week or a couple of weeks before cashing or re-depositing the bounced checks.  Mr. Kolano often accumulated multiple bounced paychecks and was forced to endure an entire month, and sometimes even more without any compensation.  Defendants' practice violated NYLL §§§ 663(1), 191(1)(a) and 191(3), which provide for the prompt payment of all wages owed.

207.    To date, Defendants have not compensated Mr. Kolano for thirteen (13) weeks of work.  Mr. Kolano incurred substantial losses as a result of Defendants' unlawful compensation practices, including bounced check fees.

### Bogdan S.  Koscielny ("Mr. Koscielny")

***Defendants Willfully Failed to Pay Mr. Koscielny Wages for all Hours Worked, and Wages at the Mandatory Statutory Rate for all Overtime Hours***.

208.    Mr. Koscielny worked for Defendants as a carpenter from on or about May of 2010 to on or about January of 2019.

209.    For the entirety of Mr. Koscielny' employment with Defendants, he was an employee of the Defendants for the following reasons: (i) Mr. Koscielny was supervised by Defendants B. Sobus, P. Sobus and Defendants' foremen; (ii) used Defendants' tools equipment and materials to perform work for Defendant; (iv) worked on a full-time basis for Defendant; (v) adhered to Defendants' set work schedule; (vi) worked at Defendants' place(s) of business and/or project sites; and (vii) was never in business for himself during his employment with Defendants.

210.    Throughout his tenure, Mr. Koscielny worked nine (9) hours per day, five (5) days per week, working an average of forty-five (45) hours per week—which equals five (5) hours of overtime per week.

211.    Defendants also required their employees to work on Saturdays when performing large-scale and/or expedited renovations.  Thus, when directed by Defendants, Mr. Koscielny worked an additional eight (8) hours of overtime per week.  At a minimum, Mr. Koscielny worked one (1) Saturday per month.

212.    In a flagrant scheme to circumvent state and federal overtime laws, Defendants misclassified Mr. Koscielny as an "independent contractor," rather than as their employee.

213.    Defendants fraudulently relied on this classification to deny Mr. Koscielny lawful wages at the mandatory rate of one-and-one-half times his regular hourly rate for all hours worked in excess of forty (40) hours per week.

214.    Mr. Koscielny was not required to clock in and out at the beginning and end of his shift.  Instead, Defendants directed their foremen to record Mr. Koscielny's hours on timesheets.  However, this time-keeping method only perpetuated Defendants' fraud, as the time sheets did not accurately reflect the hours worked by Mr. Koscielny, and he was never provided the opportunity to sign off on these time sheets.

215.    Additionally, Defendants would routinely shave three (3) to five (5) hours off of Mr. Koscielny's weekly paycheck, above and beyond the already inaccurate time sheets.

216.    Defendants flagrantly violated the FLSA and NYLL in other respects as well.

217.    For example, Defendants did not provide Mr. Koscielny with an annual notice setting forth "the rate or rates of pay and basis thereof," among other things, as required by NYLL § 195(1).

218.   Likewise, Defendants did not provide Mr. Koscielny with any wage statements as required by NYLL § 195(3).

219.   Worse still, Defendants regularly issued Mr. Koscielny paychecks that could not be processed due to insufficient funds.  When Mr. Koscielny brought this to Defendants' attention, he was directed to wait a week or a couple of weeks before cashing or re-depositing the bounced checks.  Mr. Koscielny often accumulated multiple bounced paychecks and was forced to endure an entire month, and sometimes even more without any compensation.  Defendants' practice violated NYLL §§ 663(1), 191(1)(a) and 191(3), which provide for the prompt payment of all wages owed.

220.   To date, Defendants have not compensated Mr. Koscielny for two (2) weeks of work.  Mr. Koscielny incurred substantial losses as a result of Defendants' unlawful compensation practices, including bounced check fees.

### Slawomir Komorowski ("Mr. Komorowski")

***Defendants Willfully Failed to Pay Mr. Komorowski Wages for all Hours Worked, and Wages at the Mandatory Statutory Rate for all Overtime Hours.***

221.   Mr. Komorowski worked for Defendants as a carpenter from on or about June of 2017 to on or about October of 2019.

222.   For the entirety of Mr. Komorowski's employment with Defendants, he was an employee of the Defendants for the following reasons: (i) Mr. Komorowski was supervised by Defendants B. Sobus, P. Sobus and Defendants' foremen; (ii) used Defendants' tools equipment and materials to perform work for Defendant; (iv) worked on a full-time basis for Defendant; (v) adhered to Defendants' set work schedule; (vi) worked at Defendants' place(s) of business and/or project sites; and (vii) was never in business for himself during his employment with Defendants.

223.    Throughout his tenure, Mr. Komorowski worked nine (9) hours per day, five (5) days per week, working an average of forty-five (45) hours per week—which equals five (5) hours of overtime per week.

224.    Defendants also required their employees to work on Saturdays when performing large-scale and/or expedited renovations.  Thus, when directed by Defendants, Mr. Komorowski worked an additional eight (8) hours of overtime per week.  At a minimum, Mr. Komorowski worked one (1) Saturday per month.

225.    In a flagrant scheme to circumvent state and federal overtime laws, Defendants misclassified Mr. Komorowski as an "independent contractor," rather than as their employee.

226.    Defendants fraudulently relied on this classification to deny Mr. Komorowski lawful wages at the mandatory rate of one-and-one-half times his regular hourly rate for all hours worked in excess of forty (40) hours per week.

227.    Mr. Komorowski was not required to clock in and out at the beginning and end of his shift.  Instead, Defendants directed their foremen to record Mr. Komorowski's hours on timesheets.  However, this time-keeping method only perpetuated Defendants' fraud, as the time sheets did not accurately reflect the hours worked by Mr. Komorowski, and he was never provided the opportunity to sign off on these time sheets.

228.    Additionally, Defendants would routinely shave three (3) to five (5) hours off of Mr. Komorowski's weekly paycheck, above and beyond the already inaccurate time sheets.

229.    Defendants flagrantly violated the FLSA and NYLL in other respects as well.

230.    For example, Defendants did not provide Mr. Komorowski with an annual notice setting forth "the rate or rates of pay and basis thereof," among other things, as required by NYLL § 195(1).

231.    Likewise, Defendants did not provide Mr. Komorowski with any wage statements as required by NYLL § 195(3).

232.    Worse still, Defendants regularly issued Mr. Komorowski paychecks that could not be processed due to insufficient funds.  When Mr. Komorowski brought this to Defendants' attention, he was directed to wait a week or a couple of weeks before cashing or re-depositing the bounced checks.  Mr. Komorowski often accumulated multiple bounced paychecks and was forced to endure an entire month, and sometimes even more without any compensation.  Defendants' practice violated NYLL §§§ 663(1), 191(1)(a) and 191(3), which provide for the prompt payment of all wages owed.

233.    To date, Defendants have not compensated Mr. Komorowski for two (2) weeks of work.   Mr. Komorowski incurred substantial losses as a result of Defendants' unlawful compensation practices, including bounced check fees.

### Robert Lipski ("Mr. Lipski")

***Defendants Willfully Failed to Pay Mr. Lipski Wages for all Hours Worked, and Wages at the Mandatory Statutory Rate for all Overtime Hours.***

234.    Defendants hired Mr. Lipski on or about October of 2012, as a construction worker/laborer to perform carpentry duties.

235.    Mr. Lipski was constructively discharged on or about September of 2019.

236.    For the entirety of Mr. Lipski's employment with Defendants, he was an employee of the Defendants for the following reasons: (i) Mr. Lipski was supervised by Defendants B. Sobus,

P. Sobus and Defendants' foremen; (ii) used Defendants' tools equipment and materials to perform work for Defendant; (iv) worked on a full-time basis for Defendant; (v) adhered to Defendants' set work schedule; (vi) worked at Defendants' place(s) of business and/or project sites; and (vii) was never in business for himself during his employment with Defendants.

237.    Throughout his tenure, Mr. Lipski worked nine (9) hours per day, five (5) days per week, working an average of forty-five (45) hours per week—which equals five (5) hours of overtime per week.

238.    Defendants also required their employees to work on Saturdays when performing large-scale and/or expedited renovations.  Thus, when directed by Defendants, Mr. Lipski worked an additional eight (8) hours of overtime per week.  At a minimum, Mr. Lipski worked one (1) Saturday per month.

239.    In a flagrant scheme to circumvent state and federal overtime laws, Defendants misclassified Mr. Lipski as an "independent contractor," rather than as their employee.

240.    Defendants fraudulently relied on this classification to deny Mr. Lipski lawful wages at the mandatory rate of one-and-one-half times his regular hourly rate for all hours worked in excess of forty (40) hours per week.

241.    Mr. Lipski was not required to clock in and out at the beginning and end of his shift.  Instead, Defendants directed their foremen to record Mr. Lipski's hours on timesheets.  However, this time-keeping method only perpetuated Defendants' fraud, as the time sheets did not accurately reflect the hours worked by Mr. Lipski, and he was never provided the opportunity to sign off on these time sheets.

242.    Additionally, Defendants would routinely shave three (3) to five (5) hours off of Mr. Lipski's weekly paycheck, above and beyond the already inaccurate time sheets.

243.    Defendants flagrantly violated the FLSA and NYLL in other respects as well.

244.    For example, Defendants did not provide Mr. Lipski with an annual notice setting forth "the rate or rates of pay and basis thereof," among other things, as required by NYLL § 195(1).

245.    Likewise, Defendants did not provide Mr. Lipski with any wage statements as required by NYLL § 195(3).

246.    Worse still, Defendants regularly issued Mr. Lipski paychecks that could not be processed due to insufficient funds.  When Mr. Lipski brought this to Defendants' attention, he was directed to wait a week or a couple of weeks before cashing or re-depositing the bounced checks.  Mr. Lipski often accumulated multiple bounced paychecks and was forced to endure an entire month, and sometimes even more without any compensation.  Defendants' practice violated NYLL §§§ 663(1), 191(1)(a) and 191(3), which provide for the prompt payment of all wages owed.

### Defendants Retaliate Against Mr. Lipski and Constructively Terminate His Employment.

247.    Mr. Lipski often complained to the foremen about Defendants' unlawful compensation practices.  Mr. Lipski also brought his grievances directly to B. Sobus and P. Sobus on more than one occasion.

248.    Mr. Lipski's persistence angered B. Sobus and P. Sobus, and they began to retaliate against him by issuing him an increased amount of bounced checks.

249.    By the end of his employment with Defendants, Mr. Lipski had accumulated thirteen (13) bounced checks.

250.    Fueled by economic desperation, Mr. Lipski was compelled to tender his resignation.  No employee should be forced to work without pay where they are subject to repeated

and flagrant violations of federal and state law, and where their employer not only refuses to compensate them in accordance with the law, but also, retaliates against them when the employee asks for their lawful wages.

### Robert Sadowski ("Mr. Sadowski")

***Defendants Willfully Failed to Pay Mr. Sadowski Wages for all Hours Worked, and Wages at the Mandatory Statutory Rate for all Overtime Hours.***

251.   Mr. Sadowski worked for Defendants as a carpenter from on or about June of 2018 to on or about October of 2019.

252.   For the entirety of Mr. Sadowski's employment with Defendants, he was an employee of the Defendants for the following reasons: (i) Mr. Sadowski was supervised by Defendants B. Sobus, P. Sobus and Defendants' foremen; (ii) used Defendants' tools equipment and materials to perform work for Defendant; (iv) worked on a full-time basis for Defendant; (v) adhered to Defendants' set work schedule; (vi) worked at Defendants' place(s) of business and/or project sites; and (vii) was never in business for himself during his employment with Defendants.

253.   Throughout his tenure, Mr. Sadowski worked eight (8) hours per day, five (5) days per week, working an average of forty-five (45) hours per week—which equals five (5) hours of overtime per week.

254.   Defendants also required their employees to work on Saturdays when performing large-scale and/or expedited renovations.  Thus, when directed by Defendants, Mr. Sadowski worked an additional eight (8) hours of overtime per week.  At a minimum, Mr. Sadowski worked one (1) Saturday per month.

255.   In a flagrant scheme to circumvent state and federal overtime laws, Defendants misclassified Mr. Sadowski as an "independent contractor," rather than as their employee.

256.   Defendants fraudulently relied on this classification to deny Mr. Sadowski lawful wages at the mandatory rate of one-and-one-half times his regular hourly rate for all hours worked in excess of forty (40) hours per week.

257.   Mr. Sadowski was not required to clock in and out at the beginning and end of his shift.  Instead, Defendants directed their foremen to record Mr. Sadowski' hours on timesheets. However, this time-keeping method only perpetuated Defendants' fraud, as the time sheets did not accurately reflect the hours worked by Mr. Sadowski, and he was never provided the opportunity to sign off on these time sheets.

258.   Additionally, Defendants would routinely shave three (3) to five (5) hours off of Mr. Sadowski's weekly paycheck, above and beyond the already inaccurate time sheets.

259.   Defendants flagrantly violated the FLSA and NYLL in other respects as well.

260.   For example, Defendants did not provide Mr. Sadowski with an annual notice setting forth "the rate or rates of pay and basis thereof," among other things, as required by NYLL § 195(1).

261.   Likewise, Defendants did not provide Mr. Sadowski with any wage statements as required by NYLL § 195(3).

262.    Worse still, Defendants regularly issued Mr. Sadowski paychecks that could not be processed due to insufficient funds.  When Mr. Sadowski brought this to Defendants' attention, he was directed to wait a week or a couple of weeks before cashing or re-depositing the bounced checks.  Mr. Sadowski often accumulated multiple bounced paychecks and was forced to endure an entire month, and sometimes even more without any compensation.  Defendants' practice violated NYLL §§§ 663(1), 191(1)(a) and 191(3), which provide for the prompt payment of all wages owed.

263.     To date, Defendants have not compensated Mr. Sadowski for six (6) weeks of work.  Mr. Sadowski incurred substantial losses as a result of Defendants' unlawful compensation practices, including bounced check fees.

### Henryk Sagan ("Mr. Sagan")

***Defendants Willfully Failed to Pay Mr. Sagan Wages for all Hours Worked, and Wages at the Mandatory Statutory Rate for all Overtime Hours.***

264.     Mr. Sagan worked for Defendants as a carpenter from on or about February of 2017 to April of 2019.

265.     For the entirety of Mr. Sagan's employment with Defendants, he was an employee of the Defendants for the following reasons: (i) Mr. Sagan was supervised by Defendants B. Sobus, P. Sobus and Defendants' foremen; (ii) used Defendants' tools equipment and materials to perform work for Defendant; (iv) worked on a full-time basis for Defendant; (v) adhered to Defendants' set work schedule; (vi) worked at Defendants' place(s) of business and/or project sites; and (vii) was never in business for himself during his employment with Defendants.

266.     Throughout his tenure, Mr. Sagan worked nine (9) hours per day, five (5) days per week, working an average of forty-five (45) hours per week—which equals five (5) hours of overtime per week.

267.     Defendants also required their employees to work on Saturdays when performing large-scale and/or expedited renovations.  Thus, when directed by Defendants, Mr. Sagan worked an additional eight (8) hours of overtime per week.  At a minimum, Mr. Sagan worked one (1) Saturday per month.

268.    In a flagrant scheme to circumvent state and federal overtime laws, Defendants misclassified Mr. Sagan as an "independent contractor," rather than as their employee.

269.    Defendants fraudulently relied on this classification to deny Mr. Sagan lawful wages at the mandatory rate of one-and-one-half times his regular hourly rate for all hours worked in excess of forty (40) hours per week.

270.    Mr. Sagan was not required to clock in and out at the beginning and end of his shift. Instead, Defendants directed their foremen to record Mr. Sagan's hours on timesheets. However, this time-keeping method only perpetuated Defendants' fraud, as the time sheets did not accurately reflect the hours worked by Mr. Sagan, and he was never provided the opportunity to sign off on these time sheets.

271.    Additionally, Defendants would routinely shave three (3) to five (5) hours off of Mr. Sagan's weekly paycheck, above and beyond the already inaccurate time sheets.

272.    Defendants flagrantly violated the FLSA and NYLL in other respects as well.

273.    For example, Defendants did not provide Mr. Sagan with an annual notice setting forth "the rate or rates of pay and basis thereof," among other things, as required by NYLL § 195(1).

274.    Likewise, Defendants did not provide Mr. Sagan with any wage statements as required by NYLL § 195(3).

275.     Worse still, Defendants regularly issued Mr. Sagan paychecks that could not be processed due to insufficient funds. When Mr. Sagan brought this to Defendants' attention, he was directed to wait a week or a couple of weeks before cashing or re-depositing the bounced

checks.  Mr. Sagan often accumulated multiple bounced paychecks and was forced to endure an entire month, and sometimes even more without any compensation.  Defendants' practice violated NYLL §§§ 663(1), 191(1)(a) and 191(3), which provide for the prompt payment of all wages owed.

276.    To date, Defendants have not compensated Mr. Sagan for three (3) weeks of work. Mr. Sagan incurred substantial losses as a result of Defendants' unlawful compensation practices, including bounced check fees.

### Zbigniew Storczynski ("Mr. Storczynski")

***Defendants Willfully Failed to Pay Mr. Storczynski Wages for all Hours Worked, and Wages at the Mandatory Statutory Rate for all Overtime Hours.***

277.    Defendants hired Mr. Storczynski on or about January of 2007, as a construction worker/laborer to perform carpentry duties.

278.    Mr. Storczynski was constructively discharged on or about July of 2019.

279.    For the entirety of Mr. Storczynski's employment with Defendants, he was an employee of the Defendants for the following reasons: (i) Mr. Storczynski was supervised by Defendants B. Sobus, P. Sobus and Defendants' foremen; (ii) used Defendants' tools equipment and materials to perform work for Defendant; (iv) worked on a full-time basis for Defendant; (v) adhered to Defendants' set work schedule; (vi) worked at Defendants' place(s) of business and/or project sites; and (vii) was never in business for himself during his employment with Defendants.

280.    Throughout his tenure, Mr. Storczynski worked nine (9) hours per day, five (5) days per week, working an average of forty-five (45) hours per week—which equals five (5) hours of overtime per week.

281.   Defendants also required their employees to work on Saturdays when performing large-scale and/or expedited renovations.  Thus, when directed by Defendants, Mr. Storczynski worked an additional eight (8) hours of overtime per week.  At a minimum, Mr. Storczynski worked one (1) Saturday per month.

282.   In a flagrant scheme to circumvent state and federal overtime laws, Defendants misclassified Mr. Storczynski as an "independent contractor," rather than as their employee.

283.   Defendants fraudulently relied on this classification to deny Mr. Storczynski lawful wages at the mandatory rate of one-and-one-half times his regular hourly rate for all hours worked in excess of forty (40) hours per week.

284.   Mr. Storczynski was not required to clock in and out at the beginning and end of his shift.  Instead, Defendants directed their foremen to record Mr. Storczynski's hours on timesheets.  However, this time-keeping method only perpetuated Defendants' fraud, as the time sheets did not accurately reflect the hours worked by Mr. Storczynski, and he was never provided the opportunity to sign off on these time sheets.

285.   Additionally, Defendants would routinely shave three (3) to five (5) hours off of Mr. Storczynski's weekly paycheck, above and beyond the already inaccurate time sheets.

286.   Defendants flagrantly violated the FLSA and NYLL in other respects as well.

287.   For example, Defendants did not provide Mr. Storczynski with an annual notice setting forth "the rate or rates of pay and basis thereof," among other things, as required by NYLL § 195(1).

288.   Likewise, Defendants did not provide Mr. Storczynski with any wage statements as required by NYLL § 195(3).

289.   Worse still, Defendants regularly issued Mr. Storczynski paychecks that could not

be processed due to insufficient funds.   When Mr. Storczynski brought this to Defendants'
attention, he was directed to wait a week or a couple of weeks before cashing or re-depositing the
bounced checks.  Mr. Storczynski often accumulated multiple bounced paychecks and was forced
to endure an entire month, and sometimes even more without any compensation.  Defendants'
practice violated NYLL §§§ 663(1), 191(1)(a) and 191(3), which provide for the prompt payment
of all wages owed.

### *Defendants Retaliate Against Mr. Storczynski and Constructively Terminate His Employment.*

290.    Mr. Storczynski often complained to the foremen about Defendants' unlawful
compensation practices.  Mr. Storczynski also brought his grievances directly to B. Sobus and P.
Sobus on more than one occasion.

291.    Mr. Storczynski's persistence angered B. Sobus and P. Sobus, and they began to
retaliate against him by issuing him an increased amount of bounced checks.

292.    By the end of his employment with Defendants, Mr. Storczynski had accumulated
eight (8) bounced checks.

293.    Fueled by economic desperation, Mr. Storczynski was compelled to tender his
resignation.  No employee should be forced to work without pay where they are subject to repeated
and flagrant violations of federal and state law, and where their employer not only refuses to
compensate them in accordance with the law, but also, retaliates against them when the employee
asks for their lawful wages.

### Jose I.  Guazhima ("Mr. Guazhima")

### *Defendants Willfully Failed to Pay Mr. Guazhima Wages for all Hours Worked, and Wages at the Mandatory Statutory Rate for all Overtime Hours.*

294.    Defendants hired Mr. Guazhima on or about April of 2006, as a construction worker/laborer to perform painting and plastering duties.

295.    Mr. Guazhima was constructively discharged on or about August of 2019.

296.    For the entirety of Mr. Guazhima's employment with Defendants, he was an employee of the Defendants for the following reasons: (i) Mr. Guazhima was supervised by Defendants B. Sobus, P. Sobus and Defendants' foremen; (ii) used Defendants' tools equipment and materials to perform work for Defendant; (iv) worked on a full-time basis for Defendant; (v) adhered to Defendants' set work schedule; (vi) worked at Defendants' place(s) of business and/or project sites; and (vii) was never in business for himself during his employment with Defendants.

297.    Throughout his tenure, Mr. Guazhima worked nine (9) hours per day, five (5) days per week, working an average of forty-five (45) hours per week—which equals five (5) hours of overtime per week.

298.    Defendants also required their employees to work on Saturdays when performing large-scale and/or expedited renovations.  Thus, when directed by Defendants, Mr. Guazhima worked an additional eight (8) hours of overtime per week.  At a minimum, Mr. Guazhima worked two (2) Saturdays per month.

299.    In a scheme to circumvent state and federal overtime laws, Defendants misclassified Mr. Guazhima as an "independent contractor," rather than as their employee.

300.    Defendants fraudulently relied on this classification to deny Mr. Guazhima lawful wages at the mandatory rate of one-and-one-half times his regular hourly rate for all hours worked in excess of forty (40) hours per week.

301.    Mr. Guazhima was not required to clock in and out at the beginning and end of his shift.  Instead, Defendants directed their foremen to record Mr. Guazhima's hours on timesheets.

However, this time-keeping method only perpetuated Defendants' fraud as the time sheets did not accurately reflect the hours worked by Mr. Guazhima and he was never provided the opportunity to sign off on these time sheets.

302.    Additionally, Defendants would routinely shave three (3) to five (5) hours off of Mr. Guazhima's weekly paycheck, above and beyond the already inaccurate time sheets.

303.    Defendants flagrantly violated the FLSA and NYLL in other respects as well.

304.    For example, Defendants did not provide Mr. Guazhima with an annual notice setting forth "the rate or rates of pay and basis thereof," among other things as required by NYLL § 195(1).

305.    Likewise, Defendants did not provide Mr. Guazhima with any wage statements as required by NYLL § 195(3).

306.    Worse still, Defendants regularly issued Mr. Guazhima paychecks that could not be processed due to insufficient funds.  When Mr. Guazhima brought this to Defendants' attention, he was directed to wait a week or a couple of weeks before cashing or re-depositing the bounced checks.  Mr. Guazhima often accumulated multiple bounced paychecks and was forced to endure an entire month, and sometimes even more without any compensation.  Defendants' practice violated NYLL §§§ 663(1), 191(1)(a) and 191(3), which provide for the prompt payment of all wages owed.

307.    To date, Defendants have not compensated Mr. Guazhima for three (3) weeks of work.  Mr. Guazhima incurred substantial losses as a result of Defendants' unlawful compensation practices, including bounced check fees.

### Prisciliano F.  Guzman ("Mr. Guzman")

***Defendants Willfully Failed to Pay Mr. Guzman Wages for all Hours Worked, and Wages at the Mandatory Statutory Rate for all Overtime Hours.***

308.   Mr. Guzman worked for Defendants as a painter/plasterer from on or about February of 2012 to on or about July of 2019.

309.   For the entirety of Mr. Guzman's employment with Defendants, he was an employee of the Defendants for the following reasons: (i) Mr. Guzman was supervised by Defendants B. Sobus, P. Sobus and Defendants' foremen; (ii) used Defendants' tools equipment and materials to perform work for Defendant; (iv) worked on a full-time basis for Defendant; (v) adhered to Defendants' set work schedule; (vi) worked at Defendants' place(s) of business and/or project sites; and (vii) was never in business for himself during his employment with Defendants.

310.   Throughout his tenure, Mr. Guzman worked nine (9) hours per day, five (5) days per week, working an average of forty-five (45) hours per week—which equals five (5) hours of overtime per week.

311.   Defendants also required their employees to work on Saturdays when performing large-scale and/or expedited renovations.   Thus, when directed by Defendants, Mr. Guzman worked an additional eight (8) hours of overtime per week.   At a minimum, Mr. Guzman worked two (2) Saturdays per month.

312.   In a scheme to circumvent state and federal overtime laws, Defendants misclassified Mr. Guzman as an "independent contractor," rather than as their employee.

313.   Defendants fraudulently relied on this classification to deny Mr. Guzman lawful wages at the mandatory rate of one-and-one-half times his regular hourly rate for all hours worked in excess of forty (40) hours per week.

314.   Mr. Guzman was not required to clock in and out at the beginning and end of his shift.   Instead, Defendants directed their foremen to record Mr. Guzman's hours on timesheets. However, this time-keeping method only perpetuated Defendants' fraud as the time sheets did not

accurately reflect the hours worked by Mr. Guzman and he was never provided the opportunity to sign off on these time sheets.

315.    Additionally, Defendants would routinely shave three (3) to five (5) hours off of Mr. Guzman's weekly paycheck, above and beyond the already inaccurate time sheets.

316.    Defendants flagrantly violated the FLSA and NYLL in other respects as well.

317.    For example, Defendants did not provide Mr. Guzman with an annual notice setting forth "the rate or rates of pay and basis thereof," among other things, as required by NYLL § 195(1).

318.    Likewise, Defendants did not provide Mr. Guzman with any wage statements as required by NYLL § 195(3).

319.    Worse still, Defendants regularly issued Mr. Guzman paychecks that could not be processed due to insufficient funds.  When Mr. Guzman brought this to Defendants' attention, he was directed to wait a week or a couple of weeks before cashing or re-depositing the bounced checks.  Mr. Guzman often accumulated multiple bounced paychecks and was forced to endure an entire month, and sometimes even more without any compensation.  Defendants' practice violated NYLL §§§ 663(1), 191(1)(a) and 191(3), which provide for the prompt payment of all wages owed.

320.    To date, Defendants have not compensated Mr. Guzman for four (4) weeks of work. Mr. Guzman incurred substantial losses as a result of Defendants' unlawful compensation practices, including bounced check fees.

### Segundo Raul Pullutaci Toasa ("Mr. Pullutaci")

***Defendants Willfully Failed to Pay Mr. Pullutaci Wages for all Hours Worked, and Wages at the Mandatory Statutory Rate for all Overtime Hours.***

321.    Defendants hired Mr. Pullutaci on or about January of 2012, as a construction worker/laborer to perform painting and plastering duties.

322.    For the entirety of Mr. Pullutaci's employment with Defendants, he has been an employee of the Defendants for the following reasons: (i) Mr. Pullutaci is supervised by Defendants B. Sobus, P. Sobus and Defendants' foremen; (ii) uses Defendants' tools equipment and materials to perform work for Defendant; (iv) works on a full-time basis for Defendant; (v) adheres to Defendants' set work schedule; (vi) works at Defendants' place(s) of business and/or project sites; and (vii) has not been in business for himself.

323.    Mr. Pullutaci is directed to work nine (9) hours per day, five (5) days per week, working an average of forty-five (45) hours per week—which equals five (5) hours of overtime per week.

324.    Defendants also require their employees to work on Saturdays when performing large-scale and/or expedited renovations.  Thus, when directed by Defendants, Mr. Pullutaci worked an additional eight (8) hours of overtime per week.  At a minimum, Mr. Pullutaci worked and continues to work two (2) Saturdays per month.

325.    In a scheme to circumvent state and federal overtime laws, Defendants misclassified Mr. Pullutaci as an "independent contractor," rather than as their employee.

326.    Defendants fraudulently rely on this classification to deny Mr. Pullutaci lawful wages at the mandatory rate of one-and-one-half times his regular hourly rate for all hours worked in excess of forty (40) hours per week.

327.    Mr. Pullutaci is not required to clock in and out at the beginning and end of his shift.  Instead, Defendants direct their foremen to record Mr. Pullutaci's hours on timesheets.  However, this time-keeping method only perpetuates Defendants' fraud as the time sheets do not

accurately reflect the hours worked by Mr. Pullutaci, and he is not provided the opportunity to sign off on these time sheets.

328.   Additionally, Defendants routinely shave three (3) to five (5) hours off of Mr. Pullutaci's weekly paycheck, above and beyond the already inaccurate time sheets.

329.   Defendants flagrantly violate the FLSA and NYLL in other respects as well.

330.   For example, Defendants failed to provide Mr. Pullutaci with an annual notice setting forth "the rate or rates of pay and basis thereof," among other things, as required by NYLL § 195(1)(a).

331.   Likewise, Defendants failed to provide Mr. Pullutaci with any wage statements as required by NYLL § 195(3).

332.   Worse still, Defendants regularly issued Mr. Pullutaci paychecks that could not be processed due to insufficient funds.  When Mr. Pullutaci brought this to Defendants' attention, he was directed to wait a week or a couple of weeks before cashing or re-depositing the bounced checks.  Mr. Pullutaci often accumulated multiple bounced paychecks and was forced to endure an entire month, and sometimes even more without any compensation.  Defendants' practice violated NYLL §§§ 663(1), 191(1)(a) and 191(3), which provide for the prompt payment of all wages owed.

333.   To date, Defendants have not compensated Mr. Pullutaci for three (3) weeks of work.  Mr. Pullutaci incurred substantial losses as a result of Defendants' unlawful compensation practices, including bounced check fees.

### Peter Furtkevic ("Mr. Furtkevic")

***Defendants Willfully Failed to Pay Mr. Furtkevic Wages for all Hours Worked, and Wages at the Mandatory Statutory Rate for all Overtime Hours.***

334.     Mr. Furtkevic worked for Defendants as a painter/plasterer from on or about June of 2015 to on or about September 2019.

335.     For the entirety of Mr. Furtkevic's employment with Defendants, he was an employee of the Defendants for the following reasons: (i) Mr. Furtkevic was supervised by Defendants B. Sobus, P. Sobus and Defendants' foremen; (ii) used Defendants' tools equipment and materials to perform work for Defendant; (iv) worked on a full-time basis for Defendant; (v) adhered to Defendants' set work schedule; (vi) worked at Defendants' place(s) of business and/or project sites; and (vii) was never in business for himself during his employment with Defendants.

336.     Throughout his tenure, Mr. Furtkevic worked nine (9) hours per day, five (5) days per week, working an average of forty-five (45) hours per week—which equals five (5) hours of overtime per week.

337.     Defendants also required their employees to work on Saturdays when performing large-scale and/or expedited renovations.  Thus, when directed by Defendants, Mr. Furtkevic worked an additional eight (8) hours of overtime per week.  At a minimum, Mr. Furtkevic worked one (1) Saturday per month.

338.     In a scheme to circumvent state and federal overtime laws, Defendants misclassified Mr. Furtkevic as an "independent contractor," rather than as their employee.

339.     Defendants fraudulently relied on this classification to deny Mr. Furtkevic lawful wages at the mandatory rate of one-and-one-half times his regular hourly rate for all hours worked in excess of forty (40) hours per week.

340.     Mr. Furtkevic was not required to clock in and out at the beginning and end of his shift.  Instead, Defendants directed their foremen to record Mr. Furtkevic's hours on timesheets. However, this time-keeping method only perpetuated Defendants' fraud as the time sheets did not

accurately reflect the hours worked by Mr. Furtkevic and he was never provided the opportunity to sign off on these time sheets.

341.   Additionally, Defendants would routinely shave three (3) to five (5) hours off of Furtkevic's weekly paycheck, above and beyond the already inaccurate time sheets.

342.   Defendants flagrantly violated the FLSA and NYLL in other respects as well.

343.   For example, Defendants did not provide Mr. Furtkevic with an annual notice setting forth "the rate or rates of pay and basis thereof," among other things as required by NYLL § 195(1).

344.   Likewise, Defendants did not provide Mr. Furtkevic with any wage statements as required by NYLL § 195(3).

345.    Worse still, Defendants regularly issued Mr. Furtkevic paychecks that could not be processed due to insufficient funds.  When Mr. Furtkevic brought this to Defendants' attention, he was directed to wait a week or a couple of weeks before cashing or re-depositing the bounced checks.  Mr. Furtkevic often accumulated multiple bounced paychecks and was forced to endure an entire month, and sometimes even more without any compensation.  Defendants' practice violated NYLL §§§ 663(1), 191(1)(a) and 191(3), which provide for the prompt payment of all wages owed.

346.   To date, Defendants have not compensated Mr. Furtkevic for three (3) weeks of work.  Mr. Furtkevic incurred substantial losses as a result of Defendants' unlawful compensation practices, including bounced check fees.

### Zdzislaw Daniec ("Mr. Daniec")

***Defendants Willfully Failed to Pay Mr. Daniec Wages for all Hours Worked, and Wages at the Mandatory Statutory Rate for all Overtime Hours.***

347.    Mr. Daniec worked for Defendants as a tiler from on or about October of 2014 to on or about October of 2019.

348.    For the entirety of Mr. Daniec's employment with Defendants, he was an employee of the Defendants for the following reasons: (i) Mr. Daniec was supervised by Defendants B. Sobus, P. Sobus and Defendants' foremen; (ii) used Defendants' tools equipment and materials to perform work for Defendant; (iv) worked on a full-time basis for Defendant; (v) adhered to Defendants' set work schedule; (vi) worked at Defendants' place(s) of business and/or project sites; and (vii) was never in business for himself during his employment with Defendants.

349.    Throughout his tenure, Mr. Daniec worked nine (8) hours per day, five (5) days per week, working an average of forty-five (45) hours per week—which equals five (5) hours of overtime per week.

350.    Defendants also required their employees to work on Saturdays when performing large-scale and/or expedited renovations.  Thus, when directed by Defendants, Mr. Daniec worked an additional eight (8) hours of overtime per week.  At a minimum, Mr. Daniec worked one (1) Saturday per month.

351.    In a scheme to circumvent state and federal overtime laws, Defendants misclassified Mr. Daniec as an "independent contractor," rather than as their employee.

352.    Defendants fraudulently relied on this classification to deny Mr. Daniec lawful wages at the mandatory rate of one-and-one-half times his regular hourly rate for all hours worked in excess of forty (40) hours per week.

353.    Mr. Daniec was not required to clock in and out at the beginning and end of his shift.  Instead, Defendants directed their foremen to record Mr. Daniec's hours on timesheets. However, this time-keeping method only perpetuated Defendants' fraud as the time sheets did not

accurately reflect the hours worked by Mr. Daniec and he was never provided the opportunity to sign off on these time sheets.

354.    Additionally, Defendants would routinely shave three (3) to five (5) hours off of Mr. Daniec's weekly paycheck, above and beyond the already inaccurate time sheets.

355.    Defendants flagrantly violated the FLSA and NYLL in other respects as well.

356.    For example, Defendants did not provide Mr. Daniec with an annual notice setting forth "the rate or rates of pay and basis thereof," among other things as required by NYLL § 195(1).

357.    Likewise, Defendants did not provide Mr. Daniec with any wage statements as required by NYLL § 195(3).

358.     Worse still, Defendants regularly issued Mr. Daniec paychecks that could not be processed due to insufficient funds.  When Mr. Daniec brought this to Defendants' attention, he was directed to wait a week or a couple of weeks before cashing or re-depositing the bounced checks.  Mr. Daniec often accumulated multiple bounced paychecks and was forced to endure an entire month, and sometimes even more without any compensation.  Defendants' practice violated NYLL §§§ 663(1), 191(1)(a) and 191(3), which provide for the prompt payment of all wages owed.

359.    To date, Defendants have not compensated Mr. Daniec for two (2) weeks of work. Mr. Daniec incurred substantial losses as a result of Defendants' unlawful compensation practices, including bounced check fees.

### Samuel Galindo ("Mr. Galindo")

***Defendants Willfully Failed to Pay Mr. Galindo Wages for all Hours Worked, and Wages at the Mandatory Statutory Rate for all Overtime Hours.***

360.    Mr. Galindo worked for Defendants as a painter from on or about May of 2019 to on or about October of 2019.

361.    For the entirety of Mr. Galindo's employment with Defendants, he was an employee of the Defendants for the following reasons: (i) Mr. Galindo was supervised by Defendants B. Sobus, P. Sobus and Defendants' foremen; (ii) used Defendants' tools equipment and materials to perform work for Defendant; (iv) worked on a full-time basis for Defendant; (v) adhered to Defendants' set work schedule; (vi) worked at Defendants' place(s) of business and/or project sites; and (vii) was never in business for himself during his employment with Defendants.

362.    Throughout his tenure, Mr. Galindo worked nine (9) hours per day, five (5) days per week, working an average of forty-five (45) hours per week—which equals five (5) hours of overtime per week.

363.    In a scheme to circumvent state and federal overtime laws, Defendants misclassified Mr. Galindo as an "independent contractor," rather than as their employee.

364.    Defendants fraudulently relied on this classification to deny Mr. Galindo lawful wages at the mandatory rate of one-and-one-half times his regular hourly rate for all hours worked in excess of forty (40) hours per week.

365.    Mr. Galindo was not required to clock in and out at the beginning and end of his shift.  Instead, Defendants directed their foremen to record Mr. Galindo's hours on timesheets. However, this time-keeping method only perpetuated Defendants' fraud as the time sheets did not accurately reflect the hours worked by Mr. Galindo and he was never provided the opportunity to sign off on these time sheets.

366.    Additionally, Defendants would routinely shave three (3) to five (5) hours off of Mr. Galindo's weekly paycheck, above and beyond the already inaccurate time sheets.

367.    Defendants flagrantly violated the FLSA and NYLL in other respects as well.

368.    For example, Defendants did not provide Mr. Galindo with an annual notice setting forth "the rate or rates of pay and basis thereof," among other things as required by NYLL § 195(1).

369.    Likewise, Defendants did not provide Mr. Galindo with any wage statements as required by NYLL § 195(3).

370.     Worse still, Defendants regularly issued Mr. Galindo paychecks that could not be processed due to insufficient funds.  When Mr. Galindo brought this to Defendants' attention, he was directed to wait a week or a couple of weeks before cashing or re-depositing the bounced checks.  Mr. Galindo often accumulated multiple bounced paychecks and was forced to endure an entire month, and sometimes even more without any compensation.  Defendants' practice violated NYLL §§ 663(1), 191(1)(a) and 191(3), which provide for the prompt payment of all wages owed.

371.    To date, Defendants have not compensated Mr. Galindo for two (2) weeks of work. Mr. Galindo incurred substantial losses as a result of Defendants' unlawful compensation practices, including bounced check fees.

### **Marek Pomaski ("Mr. Pomaski")**

***Defendants Willfully Failed to Pay Mr. Pomaski Wages for all Hours Worked, and Wages at the Mandatory Statutory Rate for all Overtime Hours.***

372.    Mr. Pomaski worked for Defendants as a tiler from on or about May of 2010 to on or about August of 2019.

373.    For the entirety of Mr. Pomaski's employment with Defendants, he was an employee of the Defendants for the following reasons: (i) Mr. Pomaski was supervised by Defendants B. Sobus, P. Sobus and Defendants' foremen; (ii) used Defendants' tools equipment and materials to perform work for Defendant; (iv) worked on a full-time basis for Defendant; (v)

adhered to Defendants' set work schedule; (vi) worked at Defendants' place(s) of business and/or project sites; and (vii) was never in business for himself during his employment with Defendants.

374.   Throughout his tenure, Mr. Pomaski worked nine (9) hours per day, five (5) days per week, working an average of forty-five (45) hours per week—which equals five (5) hours of overtime per week.

375.   Defendants also required their employees to work on Saturdays when performing large-scale and/or expedited renovations.   Thus, when directed by Defendants, Mr. Pomaski worked an additional eight (8) hours of overtime per week.   At a minimum, Mr. Pomaski worked two (2) Saturdays per month.

376.   In a scheme to circumvent state and federal overtime laws, Defendants misclassified Mr. Pomaski as an "independent contractor," rather than as their employee.

377.   Defendants fraudulently relied on this classification to deny Mr. Pomaski lawful wages at the mandatory rate of one-and-one-half times his regular hourly rate for all hours worked in excess of forty (40) hours per week.

378.   Mr. Pomaski was not required to clock in and out at the beginning and end of his shift.   Instead, Defendants directed their foremen to record Mr. Pomaski's hours on timesheets.  However, this time-keeping method only perpetuated Defendants' fraud as the time sheets did not accurately reflect the hours worked by Mr. Piatek and he was never provided the opportunity to sign off on these time sheets.

379.   Additionally, Defendants would routinely shave three (3) to five (5) hours off of Mr. Pomaski's weekly paycheck, above and beyond the already inaccurate time sheets.

380.   Defendants flagrantly violated the FLSA and NYLL in other respects as well.

381.    For example, Defendants did not provide Mr. Piatek with an annual notice setting forth "the rate or rates of pay and basis thereof," among other things, as required by NYLL § 195(1).

382.    Likewise, Defendants did not provide Mr. Pomaski with any wage statements as required by NYLL § 195(3).

383.    Worse still, Defendants regularly issued Mr. Pomaski paychecks that could not be processed due to insufficient funds.  When Mr. Pomaski brought this to Defendants' attention, he was directed to wait a week or a couple of weeks before cashing or re-depositing the bounced checks.  Mr. Pomaski often accumulated multiple bounced paychecks and was forced to endure an entire month, and sometimes even more without any compensation.  Defendants' practice violated NYLL §§§ 663(1), 191(1)(a) and 191(3), which provide for the prompt payment of all wages owed.

384.    To date, Defendants have not compensated Mr. Pomaski for three (3) weeks of work.  Mr. Pomaski incurred substantial losses as a result of Defendants' unlawful compensation practices, including bounced check fees.

### Pieczykolan Mariusz ("Mr. Mariusz")

***Defendants Willfully Fail to Pay Mr. Mariusz Wages for all Hours Worked, and Wages at the Mandatory Statutory Rate for all Overtime Hours.***

385.    Mr. Mariusz worked for Defendants as an electrician from on or about March of 2019 to on or about August of 2019.

386.    For the entirety of Mr. Mariusz' employment with Defendants, he has been an employee of the Defendants for the following reasons: (i) Mr. Mariusz is supervised by Defendants B. Sobus and P. Sobus; (ii) uses Defendants' tools equipment and materials to perform work for Defendant; (iv) works on a full-time basis for Defendant; (v) adheres to Defendants' set work

schedule; (vi) works at Defendants' place(s) of business and/or project sites; and (vii) has not been in business for himself.

387. Mr. Mariusz is directed to work nine (9) hours per day, five (5) days per week, working an average of forty-five (45) hours per week—which equals five (5) hours of overtime per week.

388. In a scheme to circumvent state and federal overtime laws, Defendants misclassified Mr. Mariusz as an "independent contractor," rather than as their employee.

389. Defendants fraudulently rely on this classification to deny Mr. Mariusz lawful wages at the mandatory rate of one-and-one-half times his regular hourly rate for all hours worked in excess of forty (40) hours per week.

390. Additionally, Defendants routinely shave three (3) to five (5) hours off of Mr. Mariusz's weekly paycheck.

391. Defendants flagrantly violate the FLSA and NYLL in other respects as well.

392. For example, Defendants failed to provide Mr. Mariusz with an annual notice setting forth "the rate or rates of pay and basis thereof," among other things as required by NYLL § 195(1).

393. Likewise, Defendants failed to provide Mr. Mariusz with any wage statements as required by NYLL § 195(3).

394. Worse still, Defendants regularly issued Mr. Mariusz paychecks that could not be processed due to insufficient funds. When Mr. Mariusz brought this to Defendants' attention, he was directed to wait a week or a couple of weeks before cashing or re-depositing the bounced checks. Mr. Mariusz often accumulated multiple bounced paychecks and was forced to endure an entire month, and sometimes even more without any compensation. Defendants' practice violated

NYLL §§§ 663(1), 191(1)(a) and 191(3), which provide for the prompt payment of all wages owed.

395.    To date, Defendants have not compensated Mr. Mariusz for four (4) weeks of work. Mr. Mariusz incurred substantial losses as a result of Defendants' unlawful compensation practices, including bounced check fees.

### Bilski Lukasz  ("Mr. A. Lukasz")

***Defendants Willfully Failed to Pay Mr. A. Lukasz Wages for all Hours Worked, and Wages at the Mandatory Statutory Rate for all Overtime Hours.***

396.    Defendants hired Mr. A. Lukasz as an electrician on or about April of 2012.

397.    For the entirety of Mr. A. Lukasz' employment with Defendants, he has been an employee of the Defendants for the following reasons: (i) Mr. A. Lukasz is supervised by Defendants B. Sobus and P. Sobus; (ii) uses Defendants' tools equipment and materials to perform work for Defendant; (iv) works on a full-time basis for Defendant; (v) adheres to Defendants' set work schedule; (vi) works at Defendants' place(s) of business and/or project sites; and (vii) has not been in business  for himself.

398.    Mr. A. Lukasz is directed to work nine (9) hours per day, five (5) days per week, working an average of forty-five (45) hours per week—which equals five (5) hours of overtime per week.

399.    In a flagrant scheme to circumvent state and federal overtime laws, Defendants misclassified Mr. A. Lukasz as an "independent contractor," rather than as their employee.

400.    Defendants fraudulently rely on this classification to deny Mr. A. Lukasz lawful wages at the mandatory rate of one-and-one-half times his regular hourly rate for all hours worked in excess of forty (40) hours per week.

401.    Additionally, Defendants routinely shave three (3) to five (5) hours off of Mr. A. Lukasz' weekly paycheck.

402.    Defendants flagrantly violate the FLSA and NYLL in other respects as well.

403.    For example, Defendants failed to provide Mr. A. Lukasz with an annual notice setting forth "the rate or rates of pay and basis thereof," among other things, as required by NYLL § 195(1).

404.    Likewise, Defendants failed to provide Mr. A. Lukasz with any wage statements as required by NYLL § 195(3).

405.    Worse still, Defendants regularly issued Mr. A. Lukasz paychecks that could not be processed due to insufficient funds.  When Mr. A. Lukasz brought this to Defendants' attention, he was directed to wait a week or a couple of weeks before cashing or re-depositing the bounced checks.  Mr. A. Lukasz often accumulated multiple bounced paychecks and was forced to endure an entire month, and sometimes even more without any compensation.  Defendants' practice violated NYLL §§ 663(1), 191(1)(a) and 191(3), which provide for the prompt payment of all wages owed.

406.    To date, Defendants have not compensated Mr. A. Lukasz for seven (7) checks of work.  Mr. A. Lukaszincurred substantial losses as a result of Defendants' unlawful compensation practices, including bounced check fees.

### Dariusz Stopyra ("Mr. Stopyra")

***Defendants Willfully Failed to Pay Mr. Stopyra Wages for all Hours Worked, and Wages at the Mandatory Statutory Rate for all Overtime Hours.***

407.    Defendants hired Mr. Stopyra as an electrician on or about January of 2018.

408.    For the entirety of Mr. Stopyra's employment with Defendants, he has been an employee of the Defendants for the following reasons: (i) Mr. Stopyra is supervised by Defendants

B. Sobus and P. Sobus; (ii) uses Defendants' tools equipment and materials to perform work for Defendant; (iv) works on a full-time basis for Defendant; (v) adheres to Defendants' set work schedule; (vi) works at Defendants' place(s) of business and/or project sites; and (vii) has not been in business for himself.

409.    Mr. Stopyra is directed to work nine (9) hours per day, five (5) days per week, working an average of forty-five (45) hours per week—which equals five (5) hours of overtime per week.

410.    In a scheme to circumvent state and federal overtime laws, Defendants misclassified Mr. Stopyra as an "independent contractor," rather than as their employee.

411.    Defendants fraudulently rely on this classification to deny Mr. Stopyra lawful wages at the mandatory rate of one-and-one-half times his regular hourly rate for all hours worked in excess of forty (40) hours per week.

412.    Additionally, Defendants routinely shave three (3) to five (5) hours off of Mr. Stopyra's weekly paycheck.

413.    Defendants flagrantly violate the FLSA and NYLL in other respects as well.

414.    For example, Defendants failed to provide Mr. Stopyra with an annual notice setting forth "the rate or rates of pay and basis thereof," among other things as required by NYLL § 195(1).

415.    Likewise, Defendants failed to provide Mr. Stopyra with any wage statements as required by NYLL § 195(3).

416.    Worse still, Defendants regularly issued Mr. Stopyra paychecks that could not be processed due to insufficient funds.  When Mr. Stopyra brought this to Defendants' attention, he was directed to wait a week or a couple of weeks before cashing or re-depositing the bounced

checks.  Mr. Stopyra often accumulated multiple bounced paychecks and was forced to endure an entire month, and sometimes even more without any compensation.  Defendants' practice violated NYLL §§§ 663(1), 191(1)(a) and 191(3), which provide for the prompt payment of all wages owed.

417.    To date, Defendants have not compensated Mr. Stopyra for fifteen (15) weeks of work.  Mr. Stopyra incurred substantial losses as a result of Defendants' unlawful compensation practices, including bounced check fees.

### Marcin Kutyla ("Mr. Kutyla")

***Defendants Willfully Failed to Pay Mr. Kutyla Wages for all Hours Worked, and Wages at the Mandatory Statutory Rate for all Overtime Hours.***

418.    Defendants hired Mr. Kutyla as a plumber on or about October of 2017.

419.    For the entirety of Mr. Kutyla's employment with Defendants, he has been an employee of the Defendants for the following reasons: (i) Mr. Kutyla is supervised by Defendants B. Sobus and P. Sobus; (ii) uses Defendants' tools equipment and materials to perform work for Defendant; (iv) works on a full-time basis for Defendant; (v) adheres to Defendants' set work schedule; (vi) works at Defendants' place(s) of business and/or project sites; and (vii) has not been in business for himself.

420.    Mr. Kutyla is directed to work nine (9) hours per day, five (5) days per week, working an average of forty-five (45) hours per week—which equals five (5) hours of overtime per week.

421.    In a scheme to circumvent state and federal overtime laws, Defendants misclassified Mr. Kutyla as an "independent contractor," rather than as their employee.

422.    Defendants fraudulently rely on this classification to deny Mr. Kutyla lawful wages at the mandatory rate of one-and-one-half times his regular hourly rate for all hours worked in excess of forty (40) hours per week.

423.    Additionally, Defendants routinely shave three (3) to five (5) hours off of Mr. Kutyla's weekly paycheck.

424.    Defendants flagrantly violate the FLSA and NYLL in other respects as well.

425.    For example, Defendants did not provide Mr. Kutyla with an annual notice setting forth "the rate or rates of pay and basis thereof," among other things as required by NYLL § 195(1).

426.    Likewise, Defendants failed to provide Mr. Kutyla with any wage statements as required by NYLL § 195(3).

427.     Worse still, Defendants regularly issued Mr. Kutyla paychecks that could not be processed due to insufficient funds.  When Mr. Kutyla brought this to Defendants' attention, he was directed to wait a week or a couple of weeks before cashing or re-depositing the bounced checks.  Mr. Kutyla often accumulated multiple bounced paychecks and was forced to endure an entire month, and sometimes even more without any compensation.  Defendants' practice violated NYLL §§§ 663(1), 191(1)(a) and 191(3), which provide for the prompt payment of all wages owed.

428.    To date, Defendants have not compensated Mr. Kutyla for thirteen (13) weeks of work.  Mr. Kutyla incurred substantial losses as a result of Defendants' unlawful compensation practices, including bounced check fees.

### Bartlomiej Kochanczyk ("Mr. Kochanczyk")

***Defendants Willfully Failed to Pay Mr. Kochanczyk Wages for all Hours Worked, and Wages at the Mandatory Statutory Rate for all Overtime Hours.***

429.    Defendants hired Mr. Kochanczyk as a plumber on or about January of 2014.

430.   For the entirety of Mr. Kochanczyk's employment with Defendants, he has been an employee of the Defendants for the following reasons: (i) Mr. Kochanczyk is supervised by Defendants B. Sobus, P. Sobus and Defendants' foremen; (ii) uses Defendants' tools equipment and materials to perform work for Defendant; (iv) works on a full-time basis for Defendant; (v) adheres to Defendants' set work schedule; (vi) works at Defendants' place(s) of business and/or project sites; and (vii) has not been in business for himself.

431.   Mr. Kochanczyk is directed to work nine (9) hours per day, five (5) days per week, working an average of forty-five (45) hours per week—which equals five (5) hours of overtime per week.

432.   In a scheme to circumvent state and federal overtime laws, Defendants misclassified Mr. Kochanczyk as an "independent contractor," rather than as their employee.

433.   Defendants fraudulently rely on this classification to deny Mr. Kochanczyk lawful wages at the mandatory rate of one-and-one-half times his regular hourly rate for all hours worked in excess of forty (40) hours per week.

434.   Additionally, Defendants routinely shave three (3) to five (5) hours off of Mr. Kochanczyk's weekly paycheck.

435.   Defendants flagrantly violate the FLSA and NYLL in other respects as well.

436.   For example, Defendants failed to provide Mr. Kochanczyk with an annual notice setting forth "the rate or rates of pay and basis thereof," among other things as required by NYLL § 195(1).

437.   Likewise, Defendants failed to provide Mr. Kochanczyk with any wage statements as required by NYLL § 195(3).

438.    Worse still, Defendants regularly issued Mr. Kochanczyk paychecks that could not be processed due to insufficient funds.   When Mr. Kochanczyk brought this to Defendants' attention, he was directed to wait a week or a couple of weeks before cashing or re-depositing the bounced checks.  Mr. Kochanczyk often accumulated multiple bounced paychecks and was forced to endure an entire month, and sometimes even more without any compensation.  Defendants' practice violated NYLL §§§ 663(1), 191(1)(a) and 191(3), which provide for the prompt payment of all wages owed.

439.    To date, Defendants have not compensated Mr. Kochanczyk for fifteen (15) weeks of work.   Mr. Kochanczyk incurred substantial losses as a result of Defendants' unlawful compensation practices, including bounced check fees.

### Jose Rodrigo Dota Torres ("Mr. R.D.  Torres")

***Defendants Willfully Failed to Pay Mr. R.D.  Torres Wages for all Hours Worked, and Wages at the Mandatory Statutory Rate for all Overtime Hours.***

440.    Defendants hired Mr. R.D.  Torres on or about February of 2002, as a laborer to work at their construction shop.

441.    For the entirety of Mr. R.D. Torres' employment with Defendants, he was an employee of the Defendants for the following reasons: (i) Mr. R.D. Torres is supervised by Defendants B. Sobus and P. Sobus; (ii) uses Defendants' tools and materials to perform work for Defendant; (iv) works on a full-time basis for Defendant; (v) adheres to Defendants' set work schedule; (vi) works at Defendants' place(s) of business and/or project sites; and (vii) was not in business for himself.

442.    Throughout his tenure, Mr. R.D. Torres worked nine (9) to ten (10) hours per day, six (6) days per week, working an average of fifty-four (54) to sixty (60) hours per week—which equals fourteen (14) to twenty (20) hours of overtime per week.

443.    In a scheme to circumvent state and federal overtime laws, Defendants misclassified Mr. R.D. Torres as an "independent contractor," rather than as their employee.

444.    Defendants failed to compensate Mr. R.D Torres lawful wages at the mandatory rate of one-and-one-half times his regular hourly rate for all hours worked in excess of forty (40) hours per week.

445.    Defendants require Mr. R.D. Torres document his hours through the use of time card machine.  However, this time keeping method was entirely unreliable, as Defendants' payroll records continuously underreported the number of hours actively worked by Mr. R.D. Torres.  The discrepancy between the actual hours Plaintiff worked and the inaccurate "official" hours reported by Defendants caused Mr. R.D. Torres to be significantly underpaid.  Specifically, Defendants engaged in a pattern and practice of shaving off three (3) to five (5) hours from Mr. R.D. Torres' weekly paycheck.

446.    Defendants flagrantly violated the FLSA and NYLL in other respects as well.

447.    For example, Defendants failed to provide Mr. R.D. Torres with an annual notice setting forth "the rate or rates of pay and basis thereof," among other things, as required by NYLL § 195(1).

448.    Likewise, Defendants failed to provide Mr. R.D. Torres with any wage statements as required by NYLL § 195(3).

449.    Worse still, Defendants regularly issued Mr. R.D Torres paychecks that could not be processed due to insufficient funds.  When Mr. R.D Torres brought this to Defendants' attention, he was directed to wait a week or a couple of weeks before cashing or re-depositing the bounced checks.  Mr. R.D Torres often accumulated multiple bounced paychecks and was forced to endure an entire month, and sometimes even more without any compensation.  Defendants'

practice violated NYLL §§§ 663(1), 191(1)(a) and 191(3), which provide for the prompt payment of all wages owed.

450.    To date, Defendants have not compensated Mr. R.D Torres for fourteen (14) weeks of work.   Mr. R.D Torres incurred substantial losses as a result of Defendants' unlawful compensation practices, including bounced check fees.

### Lech S.  Kunikowski ("Mr. Kunikowski")

***Defendants Willfully Failed to Pay Mr. Kunikowski Wages for all Hours Worked, and Wages at the Mandatory Statutory Rate for all Overtime Hours***.

451.    Defendants hired Mr. Kunikowski on or about March of 2003, as a laborer to work in their construction shop.

452.    For the entirety of Mr. Kunikowski's employment with Defendants, he has been an employee of the Defendants for the following reasons: (i) Mr. Kunikowski is supervised by Defendants B. Sobus and P. Sobus; (ii) uses Defendants' tools and materials to perform work for Defendant; (iv) works on a full-time basis for Defendant; (v) adheres to Defendants' set work schedule; (vi) works at Defendants' place(s) of business and/or project sites; and (vii) has never been in business for himself.

453.    Mr. Kunikowski is directed to work nine (9) to ten (10) hours per day, six (6) days per week, working an average of fifty-four (54) to sixty (60) hours per week—which equals fourteen (14) to twenty (20) hours of overtime per week.

454.    Defendants failed to compensate Mr. Kunikowski lawful wages at the mandatory rate of one-and-one-half times his regular hourly rate for all hours worked in excess of forty (40) hours per week.

455.    Defendants require Mr. Kunikowski document his hours through the use of time card machine.  However, this time keeping method was entirely unreliable, as Defendants' payroll

records continuously underreported the number of hours actively worked by Mr. Kunikowski.  The discrepancy between the actual hours Plaintiff worked and the inaccurate "official" hours reported by Defendants caused Mr. Kunikowski to be significantly underpaid.  Specifically, Defendants engaged in a pattern and practice of shaving off three (3) to five (5) hours from Mr. Kunikowski's weekly paycheck.

456.    Defendants flagrantly violated the FLSA and NYLL in other respects as well.

457.    For example, Defendants failed to provide Mr. Kunikowski with an annual notice setting forth "the rate or rates of pay and basis thereof," among other things, as required by NYLL § 195(1).

458.    Likewise, Defendants failed to provide Mr. Kunikowski with any wage statements as required by NYLL § 195(3).

459.    Worse still, Defendants regularly issued Mr. Kunikowski paychecks that could not be processed due to insufficient funds.  When Mr. Kunikowski brought this to Defendants' attention, he was directed to wait a week or a couple of weeks before cashing or re-depositing the bounced checks.  Mr. Kunikowski often accumulated multiple bounced paychecks and was forced to endure an entire month, and sometimes even more without any compensation.  Defendants' practice violated NYLL §§§ 663(1), 191(1)(a) and 191(3), which provide for the prompt payment of all wages owed.

460.    To date, Defendants have not compensated Mr. Kunikowski for fourteen (14) weeks of work.  Mr. Kunikowski incurred substantial losses as a result of Defendants' unlawful compensation practices, including bounced check fees.

### Salatiel E.C. Pasten ("Mr. Pasten")

***Defendants Willfully Failed to Pay Mr. Pasten Wages for all Hours Worked, and Wages at the Mandatory Statutory Rate for all Overtime Hours***.

461.    Defendants hired Mr. Pasten on or about February of 2017, as a laborer for their construction shop.

462.    Mr. Pasten was constructively discharged on or about June of 2019.

463.    For the entirety of Mr. Pasten's employment with Defendants, he was an employee of the Defendants for the following reasons: (i) Mr. Pasten was supervised by Defendants B. Sobus, P. Sobus and Defendants' foremen; (ii) used Defendants' tools and materials to perform work for Defendant; (iv) worked on a full-time basis for Defendant; (v) adhered to Defendants' set work schedule; (vi) worked at Defendants' place(s) of business and/or project sites; and (vii) was never in business for himself during his employment with Defendants.

464.    Throughout his tenure, Mr. Pasten worked nine (9) to (10) hours per day, six (6) days per week, working an average of fifty-four (54) to sixty (60) hours per week—which equals fourteen (14) to twenty (20) hours of overtime per week.

465.    Defendants failed to compensate Mr. Pasten lawful wages at the mandatory rate of one-and-one-half times his regular hourly rate for all hours worked in excess of forty (40) hours per week.

466.    Defendants required that Mr. Pasten document his hours through the use of time card machine.  However, this time-keeping method was entirely unreliable, as Defendants' payroll records continuously underreported the number of hours actively worked by Mr. Pasten The discrepancy between the actual hours Plaintiff worked and the inaccurate "official" hours reported by Defendants caused Mr. Pasten to be significantly underpaid.  Specifically, Defendants engaged in a pattern and practice of shaving off three (3) to five (5) hours from Mr. Pastens' weekly paycheck.

467.    Defendants flagrantly violated the FLSA and NYLL in other respects as well.

468.    For example, Defendants did not provide Mr. Pasten with an annual notice setting forth "the rate or rates of pay and basis thereof," among other things, as required by NYLL § 195(1).

469.    Likewise, Defendants did not provide Mr. Pasten with any wage statements as required by NYLL § 195(3).

470.    Worse still, Defendants regularly issued Mr. Pasten paychecks that could not be processed due to insufficient funds.  When Mr. Pasten brought this to Defendants' attention, he was directed to wait a week or a couple of weeks before cashing or re-depositing the bounced checks.  Mr. Pasten often accumulated multiple bounced paychecks and was forced to endure an entire month, and sometimes even more without any compensation.  Defendants' practice violated NYLL §§§ 663(1), 191(1)(a) and 191(3), which provide for the prompt payment of all wages owed.

### Defendants Retaliate Against Mr. Pasten and Constructively Terminate His Employment.

471.    On multiple occasions, Mr. Pasten complained to B. Sobus and P. Sobus about Defendants' unlawful compensation practices.

472.    Mr. Pasten's persistence angered B. Sobus and P. Sobus, and they began to retaliate against him by issuing him an increased amount of bounced checks.

473.    By the end of his employment with Defendants, Mr. Pasten had accumulated twelve (12) bounced checks.

474.    Fueled by economic desperation, Mr. Pasten was compelled to tender his resignation.  No employee should be forced to work without pay where they are subject to repeated and flagrant violations of federal and state law, and where their employer not only refuses to compensate them in accordance with the law, but also, retaliates against them when the employee asks for their lawful wages.

## Samuel G.  Juarez ("Mr. Juarez")

***Defendants Willfully Failed to Pay Mr. Juarez Wages for all Hours Worked, and Wages at the Mandatory Statutory Rate for all Overtime Hours.***

475.    Mr. Juarez worked for Defendants as a driver from on or about September of 2017 to on or about November of 2018.

476.    For the entirety of Mr. Juarez' employment with Defendants, he was an employee of the Defendants for the following reasons: (i) Mr. Juarez was supervised by Defendants B. Sobus and P. Sobus; (ii) used Defendants' vehicles and materials to perform work for Defendant; (iv) worked on a full-time basis for Defendant; (v) adhered to Defendants' set work schedule; (vi) worked at Defendants' place(s) of business and/or project sites; and (vii) was not in business for himself.

477.    Throughout his tenure, Mr. Juarez worked nine (9) to ten (10) hours per day, six (6) days per week, working an average of fifty-four (54) to sixty (60) hours per week—which equals fourteen (14) to twenty (20) hours of overtime per week.

478.    Defendants failed to compensate Mr. Juarez lawful wages at the mandatory rate of one-and-one-half times his regular hourly rate for all hours worked in excess of forty (40) hours per week.

479.    Defendants required that Mr. Juarez document his hours through the use of time card machine.  However, this time-keeping method was entirely unreliable, as Defendants' payroll records continuously underreported the number of hours actively worked by Mr. Juarez.  The discrepancy between the actual hours Plaintiff worked and the inaccurate "official" hours reported by Defendants caused Mr. Juarez to be significantly underpaid.  Specifically, Defendants engaged in a pattern and practice of shaving off three (3) to five (5) hours from Mr. Juarez' weekly paycheck.

480.    Defendants flagrantly violated the FLSA and NYLL in other respects as well.

481.    For example, Defendants did not provide Mr. Juarez with an annual notice setting forth "the rate or rates of pay and basis thereof," among other things, as required by NYLL § 195(1).

482.    Likewise, Defendants did not provide Mr. Juarez with any wage statements as required by NYLL § 195(3).

483.    Worse still, Defendants regularly issued Mr. Juarez paychecks that could not be processed due to insufficient funds.  When Mr. Juarez brought this to Defendants' attention, he was directed to wait a week or a couple of weeks before cashing or re-depositing the bounced checks.  Mr. Juarez often accumulated multiple rubber paychecks and was forced to endure an entire month, and sometimes even more without any compensation.  Defendants' practice violated NYLL §§§ 663(1), 191(1)(a) and 191(3), which provide for the prompt payment of all wages owed.

484.    To date, Defendants have not compensated Mr. Juarez for four (4) weeks of work.  Mr. Juarez incurred substantial losses as a result of Defendants' unlawful compensation practices, including bounced check fees.

### AS AND FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANTS
**(Violations of the Minimum Wage Provision under the FLSA, 29 U.S.C. § 206 *et seq.*)**

485.    Plaintiffs, FLSA Plaintiffs, and the New York Class repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

486.    The FLSA requires employers to pay wages to employees performing work in any workweek.  FLSA, 29 U.S.C. § 206(a)-(b).

487.    Defendants have engaged in a widespread and continuing pattern and practice of violating the minimum wage requirements of the FLSA, as detailed in this Complaint.

488.    Defendants violated the rights of Plaintiffs and Class members by failing to pay them the minimum wage for each hour worked in each discrete workweek.

489.    Defendants also violated the rights of Plaintiffs and Class members by failing to pay them any wages for work they performed during multiple workweeks.

490.    Further, Defendants violated the rights of Plaintiffs and Class members by failing to promptly pay them with wages during multiple workweeks.

491.    Defendants' failure to pay Plaintiffs and the Class in accordance with the minimum wage requirements of the FLSA was willful.

492.    By the foregoing reasons, Defendants are liable to Plaintiffs and Class members for their unpaid and late compensation of their wages, plus liquidated damages in the amount equal to the amount of unpaid wages, interest, attorneys' fees and costs.

### AS AND FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANTS
**(Unpaid Wages under the NYLL §§§ 663(1), 191(1)(a) and 191(3))**

493.    Plaintiffs, the FLSA Plaintiffs, and the New York Class repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

494.    NYLL § 663(1) provides in part "[i]f any employee is paid by his or her employer less than the wage to which he or she is entitled …he or she will recover in a civil action the amount of such underpayments…"

495.    Similarly, NYLL §§§ 663(1), 191(1)(a) and 191(3) provides the prompt payment of all wages owed.

496.    Defendants violated the rights of Plaintiffs and Class members by failing to pay them the minimum wage for each hour worked in each discrete workweek.

497.    Defendants also violated the rights of Plaintiffs and Class members by failing to pay them any wages for work they performed during multiple workweeks.

498.    Further, Defendants violated the rights of Plaintiffs and Class members by failing to promptly pay them with wages during multiple workweeks.

499.    Defendants' conduct was willful, intentional and/or not in good faith as evidenced by, among other things, Defendants' efforts to conceal their illegal practices by failing to provide proper wage statements and notifications of pay rate.

500.    By the foregoing reasons, Defendants are liable to the Plaintiffs and to Class members in an amount to be determined at trial, plus liquidated damages in the amount equal to the amount of unpaid wages, interest, attorneys' fees and costs.

**AS AND FOR A THIRD CAUSE OF ACTION AGAINST DEFENDANTS**
**(Unpaid Overtime under the FLSA, 29 U.S.C. §§ 201 – 219)**

501.    Plaintiffs, the FLSA Plaintiffs, and the New York Class repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

502.    In an attempt to circumvent federal overtime laws, Defendants misclassified Plaintiffs and Class members as independent contractors.

503.    Defendants violated the rights of Plaintiffs and Class members by failing to compensate them at the statutory rate of one-and-one-half times the regular rate of pay for each hour worked in excess of forty (40) per week, in violation of the FLSA, 29 U.S.C. § 207(a)(l).

504.    Defendants also eliminated some of Plaintiffs' overtime hours entirely by systematically shaving off three (3) to five (5) hours from their weekly paychecks.

505.     Defendants' failure to pay lawful overtime compensation was willful within the meaning of the FLSA, 29 U.S.C. § 255.  Defendants are liable to Plaintiffs and Class members for their unpaid overtime compensation, plus liquidated damages, reasonable attorney's fees and costs, and any other appropriate relief.

### AS AND FOR A FOURTH CAUSE OF ACTION AGAINST DEFENDANTS
### (Unpaid Overtime under the NYLL § 160 et seq.  and the NYCCRR)

506.     Plaintiffs, the FLSA Plaintiffs, and the New York Class repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

507.     NYLL § 160 and 12 NYCCRR §142-2.2 require employers to compensate their employees at a rate not less than one-and-one-half times their regular rates of pay for any hours worked in excess of forty per week.

508.     In an attempt to circumvent state overtime laws, Defendants misclassified Plaintiffs and Class members as independent contractors to avoid paying overtime wages.

509.     Defendants violated the rights of Plaintiffs and Class members by failing to compensate them at the statutory rate of one-and-one-half times the regular rate of pay for each hour worked in excess of forty (40) per week.

510.     Defendants also eliminated some of Plaintiffs' overtime hours entirely by systematically shaving off three (3) to five (5) hours from their weekly paychecks.

511.     These practices were in violation of the NYLL and NYCCRR.

512.     These practices were willful and lasted for the duration of all relevant time periods.

513.     By reason of the foregoing, Defendants are liable Plaintiffs and Class members for their unpaid overtime compensation, plus liquidated damages, reasonable attorney's fees and costs, and any other appropriate relief.

## AS AND FOR A FIFTH CAUSE OF ACTION AGAINST DEFENDANTS
**(Failure to Provide Annual Wage Notices in Violation of the NYLL § 195(1))**

514.    Plaintiffs, FLSA Plaintiffs, and the New York Class repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

515.    Pursuant to NYLL § 195(1)(a), every employer is required to provide each employee with an annual notice, setting forth, among other things, "the rate or rates of pay and basis thereof."

516.    Defendants knowingly failed to comply with this provision by failing to provide Plaintiffs and Class members with any kind of annual notice whatsoever, let alone an annual wage notice meeting the requirements of NYLL § 195(1)(a).

517.    NYLL § 198(1)(b) provides that any employee not provided such notice may collect damages of $50.00 for each work day that the violation occurred or continued to occur, up to a total of $5,000.00 per employee (together with costs and reasonable attorneys' fees, as well as appropriate injunctive and/or declaratory relief).

518.    During the course of Plaintiffs' and Class members' employment, Defendants consistently and willfully failed to provide them with adequate annual notices as required by New York law.

519.    Based on the foregoing, Defendants are therefore liable to Plaintiff and Class members in the amount of $5,000.00 per employee, plus reasonable attorney's fees and costs, and any other relief appropriate pursuant to NYLL § 198.

## AS AND FOR A SIXTH CAUSE OF ACTION AGAINST DEFENDANTS
### (Failure to Provide Wage Statements in Violation of the NYLL § 195(3))

520.    Plaintiffs, the FLSA Plaintiffs, and the New York Class repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

521.    Pursuant to NYLL § 195(3), every employer is required to:

> Furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages; name of employee; name of employer ; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages.

522.    Defendants knowingly failed to comply with this provision by failing to provide Plaintiffs and Class members with wage statements meeting the requirements set forth above.

523.    NYLL § 198(1)(d) provides that any employee not provided appropriate wage statements may collect damages of $250.00 for each work day that the violation occurred or continued to occur, up to a total of $5,000.00 per employee, together with costs and reasonable attorneys' fees as well as appropriate injunctive and/or declaratory relief.

524.    During the course of Plaintiffs' and Class members' employment, Defendants consistently and willfully failed to provide them with any or adequate wage statements as required by New York law.

525.    The paystubs provided to Plaintiffs and Class members were woefully inadequate, and did not, and cannot, satisfy the requirements of NYLL § 195(3).  Notably, Defendants routinely underreported the number of hours each Plaintiff worked and never paid the mandatory statutory rate for all overtime hours.

526.     Defendants are therefore liable to Plaintiffs and Class members in the amount of $5,000.00 per employee, plus reasonable attorney's fees and costs, and any other relief appropriate pursuant to NYLL § 198.

## AS AND FOR A SEVENTH CAUSE OF ACTION AGAINST DEFENDANTS
### (Retaliation under the NYLL § 215(1))

527.     Plaintiffs, the FLSA Plaintiffs, and the New York Class repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

528.     New York Labor Law § 215(1) provides that "No employer ...  shall discharge, penalize, or in any other manner discriminate against any employee because such employee has made a complaint to his employer...that the employer has violated any provision of this chapter [the Labor Law]."

529.     Defendants engaged in a systematic policy of willfully ignoring all requests for lawful wages, and then retaliating against employees who made such complaints.

530.     As stated at length above, Plaintiffs Mr. Fazekas, Mr. Lipski, Mr. Storczynski and Mr. Pasten began to persistently complain to B. Sobs and P. Sobus about Defendants' unlawful compensation practices.  In response, Defendants deliberately withheld and/or delayed Plaintiffs' owed wages, thereby financially damaging Plaintiffs, and culminating in their constructive discharge

531.     The temporal proximity between these Plaintiffs' complaints to B. Sobus and T. Sobus, Defendants' adverse targeted response and Plaintiffs' termination gives rise to an inference of retaliation.

532.   To the extent that Defendants B. Sobus and P. Sobus engaged in the retaliatory actions complained of herein, Zen is vicariously liable for the retaliatory actions of their employees.

533.   By reason of the foregoing, Defendants are liable to Plaintiffs, the FLSA Plaintiffs, and the New York Class in an amount to be determined at trial, plus costs and attorney's fees.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of all others similarly situated, pray for the following relief:

a.   Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth above;

b.   Certifying the New York Class in accordance with Fed. R. Civ. P. 23(b)(3) or (c)(4) with respect to the claims set forth above;

c.   Designating Plaintiffs Gabor Fazekas, Waclaw Piatek, Roman Jeglinski, Johnny P.D. Torres, Paterek Lukasz, Luis Patricio Rodriguez Sepa, Angel Diaz, Julio M. Caraballo, Stanislaw R. Siurda, Stanislaw Kuras, Andrzej Kolano, Bogdan S. Koscielny, Slawomir Komorowski, Robert Lipski, Robert Sadowski, Henryk Sagan, Zbigniew Storczynski, Jose I. Guazhima, Prisciliano F. Guzman, Segundo Raul Pullutaci Toasa, Peter Furtkevic, Zdzislaw Daniec, Samuel Galindo, Marek Pomaski, Pieczykolan Mariusz, Bilski Lukasz , Dariusz Stopyra, Marcin Kutyla, Bartlomiej Kochanczyk, Jose Rodrigo Dota Torres, Lech S. Kunikowski, Salatiel E.C. Pasten, and Samuel G. Juarez as Class Representatives;

d.   Designating Joseph & Norinsberg, LLC as Class Counsel;

e.   Issuing a judgment declaring that Defendants willfully violated the FLSA;

f.   Issuing a judgment declaring that Defendants willfully violated the NYLL;

g.   Issuing a judgment declaring that Defendants willfully violated the NYCCRR;

h.   Granting judgment in favor of Plaintiffs, FLSA Collective Action members and the New York Class members, against Defendants, awarding damages for unpaid weekly wages and late payment of wages in violation of the FLSA and NYLL;

i.   Granting judgment in favor of Plaintiffs, FLSA Collective Action members and the New York Class members, against Defendants, awarding damages in the amount of unpaid overtime wages calculated at the rate of one-and-one-half times their

regular rate of pay, multiplied by all hours worked in excess of the prescribed number of hours per week;

j.      Granting judgment in favor of Plaintiffs, FLSA Collective Action members and the New York Class members, against Defendants, awarding damages for Defendants' unlawful practice of compensating overtime hours at straight-time rates;

k.      Granting judgment in favor of Plaintiffs, FLSA Collective Action members and the New York Class members, against Defendants, awarding damages for Defendants' retaliatory practices against Plaintiffs resulting in their constructive discharge;

l.      Awarding liquidated damages to Plaintiffs, FLSA Plaintiffs, and the New York Class, in an amount equal to the amount of unpaid overtime wages found owing to Plaintiffs and the Class Members;

m.      Awarding all other available compensatory damages to Plaintiffs, FLSA Collective Action members, and the New York Class, including, *inter alia*, all unpaid wages, lost interest owed, and liquidated and double damages by Defendants under the FLSA, NYLL, and NYWPTA;

n.      Awarding reasonable attorneys' fees and costs incurred by Plaintiffs in filing this action;

o.      Awarding pre-judgment and post-judgment interest to Plaintiffs on these damages; and

p.      Awarding all such other relief that this Court deems just and proper.

Dated:   New York, New York
         March, 27 2020

                              Respectfully submitted,

                              **JOSEPH & NORINSBERG, LLC**

                              By: _____/s/_____
                              Jon L.  Norinsberg, Esq.
                              Bennitta L.  Joseph, Esq.
                              Diego O.  Barros, Esq.
                              225 Broadway, Suite 2700
                              New York, New York 10007
                              Tel: (212) 227-5700
                              Fax: (212) 406-6890
                              *Attorneys for Plaintiffs and Putative Class*

TO:    Zen Restoration, Inc.
273 Russell Street
Brooklyn, New York 11222

Zen European Restoration, Corp.
330 Calyer Street
Brooklyn, New York 11222

Primo Plumbing & HVAC, Corp.
273 Russell Street
Brooklyn, New York 11222

Midway Electric, Corp.
273 Russell Street
Brooklyn, New York 11222

Bernard Z.  Sobus
19349 McLaughlin Avenue
Hollis, New York 11423

Przemyslaw Sobus
273 Russell Street
Brooklyn, New York 11222